ANNA M. DIXON, ET AL., (CLAIMANTS), RESPONDENTS, v. POSTLEWAIT GLASS COMPANY (EMPLOYER), EQUITY MUTUAL INSURANCE COMPANY (INSURER), APPELLANTS.—238 S. W. 2d 93.

Kansas City Court of Appeals. Opinion delivered March 5, 1951.

*Watson, Ess, Whittaker, Marshall & Enggas, Douglas Stripp, Byrne F. Martin* for appellants.

176

*Wilfred Wimmell, Mack Hency* for respondents. *Roach, Brenner & Wimmell* of counsel.

BROADDUS, J.—This is a Workmen's Compensation case. The question here presented is whether or not the Industrial Commission of Missouri erred in holding that the monthly payments by the Federal Government to deceased constituted a part of deceased's wage history for the purpose of determining his earnings. The question is one of first impression in this state. It has been ably presented by counsel.

'Ralph E. Dixon was killed on July 1, 1946, while working as a warehouseman and metal fabricator at the Postlewait Glass Company plant in Kansas City, Missouri. At the time of his death he was 39 years of age and left surviving his widow and infant son.

Deceased's dependents, respondents here, hereinafter referred to as claimants, filed a claim before the Workmen's Compensation Commission against appellants, hereinafter referred to as Employer and Insurer. The sole matter of controversy was the amount of death benefits to be received by claimants.

Deceased, Ralph E. Dixon, was employed by Postlewait Glass Company on February 11, 1946. Prior thereto he was in the United States Navy. Before entering the Navy he had been employed as a tool and die worker at North American Aviation Company in Kansas City. As a veteran of World War II, he was entitled to benefits under the Servicemen's Readjustment Act of 1944, 38 U. S. C. A., Sect. 693, et seq., which is commonly known as the G. I. Bill of Rights.

When the hiring of Dixon by Employer was under discussion, it was suggested by Employer's assistant manager that Dixon be given a rate of pay which would allow collection of full Government subsistence allowance. As a result of this discussion, the hourly rate was fixed at 85 cents per hour. On February 14, 1946, Dixon applied to the Veterans Administration for an on-the-job training course as metal fabricator with employer, Postlewait Glass Company, claiming the full government subsistence allowance which the Act provided for a veteran trainee with dependents. Pursuant to this application Dixon was authorized by the Veterans Administration to receive a training subsistence allowance of $90 per month, payable, of course, by the Government. In order that Dixon might receive this subsistence allowance, it was necessary that the Employer make application to the Veterans Administration for approval of the training program. This was done, and the application contained the statement that the training period would require 24 months.

Witness, Henry Heiser, who immediately preceded deceased in this particular job, had no previous experience in warehousing or metal fabricating, but his starting wage was $1.00 per hour. Heiser performed this work without any instruction or supervision after he had been employed about two weeks. When deceased went to work, Heiser had been with the company for about six months. Heiser instructed and supervised deceased, Dixon, in his work for a period of about one month, after which time deceased was able, without instruction and assistance, to perform the duties of a metal man. Employer's witness, J. H. Postlewait, testified that the job required no particular skill, and that deceased, though he had only worked four months before his death, did better work than Heiser, the man he succeeded.

The wage scale in effect at Postlewait Glass Company and other glass companies in Kansas City for *warehousemen* at the time of Dixon's

death was 90 cents an hour. When one did metal fabricating in addition to warehousing, he would ordinarily receive 10 to 15 cents per hour more than that rate.

The referee found the average weekly wage to be $34 per week, which was the amount paid directly by the Employer to deceased. He held that the Government subsistence allowance was not to be included. His award totaled $6,950. Claimants filed application with the Industrial Commission for a review of the referee's award. That body modified the referee's award to include in the compensation base the subsistence allowance of $90 per month, and awarded a total death benefit of $11,094, finding that employee-Dixon's average weekly wage was $54.77.

Employer and Insurer appealed to the Circuit Court of Jackson County. That court affirmed the ruling of the Industrial Commission and Employer and Insurer appealed to this court.

Appellants have never disputed that respondents were entitled to receive the sum of $6,950. Thus, while the total amount of the award appealed from exceeds $7,500, the amount actually in dispute is the difference between $11,094 and $6,950, and appellate jurisdiction is therefore vested in this court pursuant to sections 3 and 13, Article V, Missouri Constitution of 1945. Sleyster v. Eugene Donzelot & Son, 20 S.W. (2nd) 69 (Mo.).

The only question presented here is the propriety of treating the subsistence payments to deceased from the Federal Government as "gratuities" and therefore "earnings" within the meaning of the Workmen's Compensation Act.

Section 3710(g) of that Act (Mo. R.S.A. 1939) provides that: *"In computing the annual earnings there shall be included the * * * value of gratuities customarily received by consent of the employer, in the usual course of business from persons other than the employer."*

In approaching the question it is to be kept in mind that it is the settled rule that the Workmen's Compensation Law is to be liberally construed in favor of the employee. Many of our decisions hold, as stated in Dauster v. Star Mfg. Co., 145 S. W. (2d) l.c. 503 (Mo. App.) that: The language used in the act and all reasonable implications therefrom shall be liberally construed to effectuate its purpose, and all doubts resolved in favor of the employee."

This rule is applicable to the question of the amount of compensation to be awarded, and in the computation of the wage base under Sec. 3710, supra; Werner v. Pioneer Cooperage Co., 155 S. W. (2d) 319 (Mo. App.) and Kinyon v. Kinyon, 71 S. W. (2d) 78 (Mo. App.).

Our courts also hold that words and phrases used in the act shall be liberally construed, and any doubt concerning their meaning shall be resolved in favor of the employee. Ellegood v. Brashear Freight Lines, 162 S. W. (2d) 628 (Mo. App.) and Bullock v. Potashnick, 162 S. W. (2d) 607 (Mo. App.).

Let us analyze section 3710(g) supra. There would seem to be no room for doubt that the United States Government was a "person" other than the employer. Likewise, employee Dixon was receiving the subsistence payments "in the usual course of business." Each month he worked for appellant-employer as a warehouseman and metal fabricator, he received $90. from the Government. Certainly there can be no doubt that appellant-employer "consented" to deceased's receipt of the $90. In fact, the employer actively co-operated. The employer suggested it, and made formal application to the Veterans Administration. Without employer's application, the employee could not have received the subsistence payments.

The next question is whether or not such payments were "customarily received." The section begins: "In computing the annual earnings * * *." The annual earnings with which we are concerned are those of employee Dixon. It was customary for him to receive these payments. Further, it was customary for veterans of World War II employed under the Servicemen's Readjustment Act to receive the payments. This is certainly the class to which deceased belonged.

Finally, did the payments by the Government to Dixon constitute "gratuities"? If these payments were not "gratuities" what were they? Were they payment for services rendered the Government? Appellants admit they were not. Were they payment for military services previously rendered the Government? Appellants again say no. Were they payment for services rendered Postlewait Glass Company? Appellants again say no because in their brief they refer with approval to the opinion of the referee saying that the payments were not "the payment of wages."

Our Federal courts have without exception held payments of this nature are "gratuities." In Van Horne v. Hines, 122 Fed. (2nd) 207, it is said: "There can be no doubt that veterans' benefits are gratuities * * *."

Under the evidence these government payments were taken into account when Dixon was employed and appellant-employer benefited directly. The hourly rate of 85 cents per hour paid Dixon by appellant-employer was a scaled-down rate, arrived at by figuring what hourly rate would permit receipt of the full subsistence allowance. The rate was 15 cents per hour less than predecessor, Heiser, received as a starting wage, and 5 cents per hour less than appellant-employer paid as a starting wage to one doing only warehousing.

Apparently there is only one reported case directly in point. Our Industrial Commission cited it as authority for its ruling. It is Wood Mercantile Company v. Cole, 209 S. W. (2d) 290, decided in 1948. There the Arkansas Supreme Court in affirming the judgment of the circuit court, ruled that veterans' subsistence allowances paid deceased during on-the-job training were "gratuities" under the Arkansas Workmens' Compensation Law and, therefore, constituted earnings

180

in determining the compensation award to the dependents of a deceased employee. Section 2(h) of the Arkansas Act, 1939, is almost identical with our section 3710(g) and provides that there shall be included "gratuities received in the course of employment from others than the employer when such gratuities are received with the knowledge of the employer." The facts in the Cole case are similar to those in the case at bar. It would serve no useful purpose to review them here.

We agree with the holding of the Arkansas court that: "When we give to the provisions of the act that liberal construction to effectuate its aim and purpose, which we have many times held we must do, * * * we think any other view than that adopted by the Circuit Court would unduly narrow the application and effect of those provisions."

The judgment of the Circuit Court upholding the award of the Industrial Commission is affirmed. *Dew, P. J.,* concurs; *Cave, J.,* not sitting.