Mary P. CROSS (Claimant), Respondent,

v.

Kenneth CRABTREE, and American Motorists Insurance Company (Employer and Insurer), Appellants.

No. 23728.

Kansas City Court of Appeals.

Missouri.

Dec. 3, 1962.

Herman M. Swafford, Alder & Morrison, Kansas City, for appellants.

James W. Benjamin and Thomas E. Sims, Kansas City, for respondent.

HUNTER, Presiding Judge.

This is an appeal from a judgment of the Circuit Court of Jackson County at Kansas City affirming the award of the Industrial Commission of Missouri in favor of claimant-respondent, Mary P. Cross, allowing the maximum death benefits and burial expenses totaling $15,500 under the Workmen's Compensation Act, of which sum only $2,771.43 had accrued at the time the present appeal was taken on June 18, 1962.

Since the amount in actual dispute for jurisdictional purposes is determined at the time an appeal is taken, this court has jurisdiction of the appeal. Snowbarger v. M. F. A. Central Cooperative, Mo.Sup., 317 S.W.2d 390; Section 477.040 RSMo 1959, V.A.M.S.

On this appeal only two basic questions are presented—namely, (1) whether there is sufficient competent and substantial evidence to sustain the award of the Industrial Commission that decedent was a statutory employee of Kenneth Crabtree; and (2) whether the finding of the Industrial Commission that the decedent's annual earnings were determinable under Section 287.250(3) RSMo 1959, was erroneous.

The Industrial Commission's findings are:

"We find from all of the evidence that the deceased employee, William B. Cross, was a statutory employee of Kenneth Crabtree on June 29, 1961; that he sustained an accident on said date arising out of and in the course of the said employment; and that as a result of said accident he sustained injuries which resulted in his death on the same day. Schwandt v. Witte, Mo.Sup., 346 S.W.2d 50; Simpson v. New Madrid Stave Co., 227 Mo.App. 331, 52 S.W.2d 615; Sargent v. Clements, 337 Mo. 1127, 88 S.W.2d 174; Baker v. Iowa-Missouri Walnut Log Co., Mo.App., 270 S.W.2d 73; Montgomery v. Mine LaMotte Corp., Mo. Sup., 304 S.W.2d 885; Pruitt v. Harker, 328 Mo. 1200, 43 S.W.2d 769.

"Respondent, Kenneth Crabtree, was a building contractor engaged in the erection of buildings, particularly houses, in the Kansas City area. During the latter part of June, 1961, he was building a house at 3200 Sunrise Slope, Independence, Missouri. It is not claimed that he was exempt from liability under the act by virtue of the provisions of Section 287.040(3) RSMo 1959. E. g. Bobbit v. Ehlers, Mo.App., 131 S.W.2d 900.

"The deceased, William B. Cross, Gerald A. Hughes, Edward E. Davidson, Hugh Thompson and one Riddle, were roofers engaged in roofing the house next door to 3200 Sunrise Slope. These men roofed houses for contractors in the Kansas City area. The group had no formal agreement between themselves but operated by rather clearly defined custom. Any member of the group could secure a roofing job from a contractor. All would then join laying the roof. On completion of the job the contractor would pay the man with whom he had dealt for the whole job. The amount so paid was determined by the number of squares of roofing laid in completing the job. The proceeds were then divided among the several workmen, each being paid pro tanto in accordance with the number of squares each had laid.

"On June 28, 1961, Crabtree came next door where the group was roofing. He talked to Gerald A. Hughes and asked him when they could start roofing the house he was erecting at 3200 Sunrise Slope. There is some evidence that he also talked to Cross, although Crabtree denied this. In any event, Cross (and possibly Hugh Thompson) commenced roofing the Crabtree house the same afternoon. The next day, the rest of the group joined them on the job. On that day (June 29, 1961), Cross fell from the roof and sustained fatal injuries.

"Crabtree maintains that he may not be deemed a statutory employer under Section 287.050(1), RSMo 1959, because the work being done by Cross was not being done under contract. In this we do not agree. The statute does not specify the form of the contract that must be used. Simpson v. New Madrid Stave Co., supra, 52 S.W.2d 1, c. 616. We are of the opinion that the contract may be implied as well as expressed. We are unable to believe that an experienced contractor, one who had used this group before, was unaware of the customs of the trade in which he had so long been engaged.

"We find and believe that Cross, Hughes, Davidson, Thompson, et al were joint

venturers; that they were subcontractors on the Crabtree job; and that respondent Crabtree was their statutory employer under the provisions of Section 287.040(1), RSMo 1959.

"We further find that Mary P. Cross, widow, was the sole, total dependent of William B. Cross at the time of his death.

"We find, further, that the employee had not been employed by the same employer continuously during the year next proceeding (sic) the injury. In accordance with Section 287.250(3) RSMo 1950, and the stipulation of the parties (Tr. pp 62, 63), we find that the annual earnings of persons in the same class in the same employment and same location was $5,000.00 per year; that by reason thereof the employee's average weekly wage is determined to be $96.15; and that the dependent widow is, therefore, entitled to death benefits of $45.00 per week for 333.33 weeks."

Appellants' first contention in substance is that claimant failed to prove either a contractual or statutory relationship between decedent and Kenneth Crabtree in order to support an employment status. Appellants deny there is any evidence sufficient to support a finding that decedent either individually or as a member of the working group had been employed either directly or indirectly by Crabtree to work on the house from which he fell to his death.

■■ Our State Constitution, Article V, section 22, V.A.M.S., requires findings of the Industrial Commission must be supported by "competent and substantial evidence upon the whole record." Hence, the rule is that the review of a compensation case is of the whole record, including the legitimate inferences to be drawn therefrom, in the light most favorable to the award of the commission, and to determine whether the commission's findings are supported by competent and substantial evidence, and are not contrary to the overwhelming weight of the evidence. Brown v. Anthony Manufacturing Company, Mo.

Sup., en Banc, 311 S.W.2d 23; Snowbarger v. M. F. A. Central Co-Operative, Mo.Sup., 349 S.W.2d 224. It is the duty of the reviewing court to set aside the commission's findings only if they are not so supported or if they are contrary to the overwhelming weight of the evidence. Williams v. Anderson Air Activities, Mo.App., 319 S.W.2d 61.

What does the whole record disclose to support the commission's finding decedent was employed by Crabtree to help shingle the roof of the house from which he fell? Edward Eugene Davidson testified that he, Gerald Hughes, Hugh Thompson, Rolley, Riddle and the deceased were shingling the roof of the house next to the house Crabtree was building. They had done Crabtree's work before. He came by the job and talked to Gerald · Hughes in Davidson's presence and to Davidson. The other mentioned men including decedent were also on the roof working but according to Davidson were apparently not near enough to participate in this conversation. "He (Crabtree) * * * wanted to know when we could start it, he wanted us to shingle it." * * * "Well, Gerald said to Mr. Hughes, he quoted back that he could get it started the next day. He would send somebody up there." A short time later that day Hugh Thompson and decedent went over to the Crabtree house and started to work on it. The rest of the group that same day finished the house they had been roofing, and the next morning all of them, including decedent, worked on the roofing of the Crabtree house. It was while decedent was shingling the Crabtree house that he fell.

On cross-examination Davidson was asked, "And he and Mr. Hughes discussed, I suppose, who would come over there and work for him? A. He wanted to know when we could all come and start his job, in so many words. * * * At this time it was your understanding he wanted all four of you over there. A. Oh, definitely, yes." Davidson did not know whether Crabtree also spoke directly to decedent

about the roofing work or who may have told decedent to work on the Crabtree house.

Gerald Hughes testified that on the day in question Bill (decedent) was closest to Crabtree when he came over to get them to get them to work on his roof. Hughes stated, " * * * I believe he (Crabtree) seen Bill on this particular day. * * * Well, he (Bill) came over the roof and said he would like to go ahead over there and go to work. Q. You mean Crabtree? A. No, Bill come to me. We were trying to get one job done and he wanted to know if he could go over and start him and I said it didn't make any difference to me. He (Bill) said Crabtree wanted to get it started. * * * When Crabtree first came over on the job next to his job, whom did he talk to? * * * I think pretty sure it was Bill Cross * * * because he was working on the side nearest to the garage at the time."

Kenneth Crabtree testified that he was a building contractor and had been all his life. He would complete about 14 houses this year, 1961. He has no direct employees and employs subcontractors to shingle his houses. He did not know the specific individuals shingling the roof of his house. He had arranged the shingling by contacting Mr. Hughes more than a week before the accident. The house next door was constructed considerably ahead of his house and there was no roofing work being done next door at any time his house was being built. The roofing next door had already been done. He stated that he (Crabtree) was the general contractor on the house at 3217 Sunrise Slope and that he subcontracted its roofing. He acknowledged decedent was killed while roofing his house but denied employing decedent to roof the house, or authorizing anyone else to employ decedent on his behalf.

In addition to the above evidence concerning decedent's employment by Crabtree the record is replete with testimony to the effect that this particular group of men had worked together as roofers for a long

time and that it was their custom, as well as a custom followed by many in their trade, for any one in the roofing group to accept employment for the whole group when their services were requested by a builder. There was evidence to the effect that it is customary for more than one person to shingle a particular house. There was testimony that it didn't matter which one of this particular group made the arrangement or which one was paid, for the money was divided by them according to the number of squares of shingles each laid on the particular roofing job. They were all union employees and they charged $5.75 a square for their individual work, the standard union rate. They worked only for employers who would pay this rate and also cover them with Workmen's Compensation Insurance.

It is our view of the evidence that it amply supports the finding of the commission that deceased was employed by Crabtree to shingle his house. We agree with the commission that a contract of employment may be implied as well as expressed. 17 C.J.S. Contracts § 4, page 318. The evidence and its reasonable inferences support the conclusion that Crabtree's conduct and statements had the effect of an offer to employ the group, including decedent, to shingle the named house and that this offer was known to decedent who, along with the others, in legal effect accepted it by going there and performing the work.

In their original answer to Mrs. Cross's claim filed with the referee who tried the case appellants stated, "Further answering, employer and insuror state that William B. Cross was a statutory employee of said employer." During the trial by leave of the referee appellants amended their answer by striking out this statement. Claimant's counsel read into the record as evidence this statement in the original answer as an admission against interest, and urges that it alone comprises competent and substantial evidence that deceased was an employee of

Crabtree. Appellants suggest numerous reasons why this "admission" has no probative value. We express difficulty in comprehending the asserted merit of these reasons. Since we have already determined that there is competent and substantial evidence, absent any consideration of this portion of appellant's original answer, to support the commission's finding of a contract of employment of deceased by Crabtree we need not express our views thereon. See, Wahl v. Cunningham, 332 Mo. 21, 56 S.W.2d 1052(14); Knorp v. Thompson, 352 Mo. 44, 175 S.W.2d 889(14).

■ Appellants also question the finding that deceased was a joint adventurer, a subcontractor, and that Crabtree was their statutory employer. Again, laying aside the effect of the original answerer's statement read in evidence that "insuror and employer state that William B. Cross was a statutory employee of said employer" we conclude there was competent and substantial evidence to support the finding.

■ In passing we note that appellants in their brief and at the trial conceded "that the work being done by the decedent Cross was a part of the regular business of Kenneth Crabtree, the alleged employer, and that the injury to the decedent occurred upon premises owned by Crabtree." The statutory employment Section 287.040, RSMo 1959, V.A.M.S., admittedly enlarged the meaning of master and servant to include independent contractors (subcontractors) doing work on the premises owned by the employer as a part of the regular business conducted thereon. See, Montgomery v. Mine La Motte Corp., Mo.Sup., 304 S.W. 2d 885. Thus, even though deceased and those working in the group with him may have been independent contractors they could still be the statutory employees of Crabtree by virtue of mentioned Section 287.040.

■ We come to appellants' next contention—that decedent's annual earnings are not to be determined under Section 287.250 (3) RSMo 1959, V.A.M.S. The pertinent findings of fact of the commission on this point is, "We find, further, that the employee had not been employed by the same employer continuously during the year next proceeding (sic) the injury." Is there competent and substantial evidence to support this finding? Upon our review of the record we have determined that there is.

No one contends that the decedent worked for one year for Crabtree. Nor does the evidence indicate that he worked for Hughes or anyone else continuously for a full year. Hughes' testimony is to the general effect the group had no particular boss; often the general contractor just "talked to anyone, the closest one to them. * * * The other men have drawn checks on jobs as well as I have on a number of occasions." Crabtree stated he had not started contacting Hughes until two or three months prior to this accident, and before that time had subcontracted with Frank Davidson. Taken as a whole the record strongly supports the mentioned finding of the commission.

Appellants suggest that the evidence reveals deceased was not a full time worker but limited himself in his employment to an annual earning of $1,200. On this subject the parties had stipulated that prior to "claimant's (sic) death on June 29, 1961, he was drawing Social Security benefits under and subject to the provisions of that law from 1956 until the time of his death and was permitted under the provisions of that law to earn up to $1,200 per year without losing the benefits of that law." It was also stipulated at the trial that "persons of the same class and type of employment in this location were making an average of $5,000 or better in this same kind of roofing industry that Mr. Cross was in at the time of his death."

Appellants concede that $5,000 is the average earning of roofers, but seek to avoid the effect of their stipulation by saying it applies only to full time roofing employees and that deceased did not engage in

full time employment or he would not have been eligible for social security. They point to Frank Davidson's testimony that in 1960 when Cross worked for him before he retired, decedent earned $1,106.55.

Stripped to its essentials appellants' contention is that decedent was in the employ of the same business operation for the full year next preceding his death; had not any other determinable income during that period; and that his actual earnings of no more than $1,200 constitute his annual earnings as contemplated by the Workmen's Compensation Law rather than the formula established in Section 287.250(3) RSMo 1959, V.A.M.S.·

We find no merit in this contention of appellants. There is no evidence which the commission was bound to accept that Frank Davidson and Gerald Hughes were the same legal entity or the same employer of deceased. While Crabtree in an unresponsive answer to a question asked spoke of them as operating a partnership, much other credible evidence adduced is to the effect that Frank Davidson and Gerald Hughes were not operating a partnership. Additionally, the record does not demonstrate that decedent did not in fact have employments other than with these two men during the year in question.

■ Section 287.250 RSMo 1959, V.A.M.S., determines the wage rate and compensation allowances under the Workmen's Compensation Act. The proper method of determining which subsection thereof is to be used in a particular case is to commence with the first subsection and to descend in numerical order under these subsections until that wage rate provision that applies under the facts of the case is found. Bietsch v. Midwest Piping & Supply Co., Mo.App., 86 S.W.2d 187.

The first two subsections of Section 287.250 are not applicable to the facts of this case because of the specific requirement therein that the injured party be "in the employment of the same employer con-

tinuously during the year next preceding the injury".

Subsection 3 of Section 287.250 provides: "If the injured person has not been engaged in the employment of the same employer for the full year immediately preceding the accident, the compensation shall be computed according to the annual earnings which persons of the same class in the same employment and same location (or if that be impracticable, of neighboring employments of the same kind) have earned during such period;" It is clear that this subsection is the controlling one under the facts found by the commission, which facts we have deemed to be supported by competent and substantial evidence upon the whole record. See, Zasslow v. Service Blue Print Co., Mo.App., 288 S.W.2d 377.

■ In view of the provisions of subsection 3 of Section 287.250 which apply to the facts before us it is immaterial that the deceased was drawing social security or may have actually earned no more than $1,200 in the year next preceding his injury and death. This subsection establishes a comparative method of computation rather than one based on actual earnings. Werner v. Pioneer Cooperage Co., Mo.App., 155 S.W.2d 319; Casebolt v. International Life Ins. Co., Mo.App., 42 S.W.2d 939; Edwards v. Ethyl Gasoline Corp., 342 Mo. 98, 112 S.W.2d 555. The Industrial Commission did not err in its application of that subsection in its determination of the amount of the death benefit.

■ Appellants' final contention is that by operation of law the exclusionary provisions of Section 287.040(3) apply to Crabtree as owner of the premises and hence he cannot be held to be a statutory employee of Cross under Section 287.010. We do not examine the merits of this contention. Appellants' counsel concedes this contention ·(defense) is raised for the first time on this appeal. It was not raised ·or presented to the referee, the Industrial Commission or the circuit court. The Industrial Commis-

sion in its findings noted, "It is not claimed that he (Cross) was exempt from liability under the act by virtue of the provisions of Section 287.040(3) RSMo 1959." By failing to present this contention prior to this appeal, appellants are precluded from appellate review thereof. See, Nichols v. Davidson Hotel Co., Mo.App., 333 S.W.2d 536, 542, and cases cited therein.

We have considered the entire record in the light of all of appellants' contentions properly before us on this appeal and have found them not meritorious. The judgment certainly is not contrary to the overwhelming weight of the evidence. Accordingly, the judgment is affirmed.

All concur.