**J. C. GLAZEBROOK, Employee, Appellant-Respondent,**

v.

**HAZELWOOD SCHOOL DISTRICT, Employer, and Queens Insurance Company of America, Insurer, Respondents-Appellants.**

Nos. 34918, 34925.

Missouri Court of Appeals,
St. Louis District,
Division One.

May 29, 1973.

Application to Transfer Denied Oct. 8, 1973.
Motion for Rehearing or Transfer
Denied Aug. 16, 1973.

Graff & Lahey, St. Louis, for respondents-appellants.

Harry J. Nichols, St. Louis, for appellant-respondent.

WEIER, Judge.

From an order of the circuit court affirming an order of the Industrial Commission, this appeal is taken. The determination of permanent total disability is not questioned. It is the method for computing the compensation awarded plaintiff that provides the issues here for review.

Plaintiff, J. C. Glazebrook, was employed on a full time basis by Bi-State Transit Company and on a part time basis by Hazelwood School District as a bus driver. He commenced working for Bi-State on July 9, 1941. His employment with Hazel-Wood School District had continued for twelve years. Whereas he worked full time for Bi-State, his employment by the school district was limited to approximately 180 days starting in September of each year and ending in June, the normal school year. As a bus driver for Bi-State, his work commenced around 6:00 a. m. and terminated around 1:10 or 1:15 p. m. After eating his lunch, he would then go to the Hazelwood School District bus lot and would start his school bus route at about 2:20 or 2.25 p. m. The route which he drove for the school district the year prior to his injury would last approximately 3¼ hours. At the time of his injury, he was on a 2-hour run.

In the school year 1967–1968, working in the morning, claimant earned $1,027.76 for driving a school bus. He was paid $7.68 for each day he worked. In the school year of 1968–1969, working in the afternoon, plain-

tiff was to be paid for 180 school days plus six paid holidays. In the few days he worked in September, 1968, on his 2-hour run in the afternoon he received $4.80 per day. A full time driver for the school district earned $3,720.00 per year. Plaintiff's weekly wage at Bi-State was $144.40.

On September 23, 1968, while working for Hazelwood School District, plaintiff was injured in an accident. Although he continued to drive for Bi-State for a few months following the accident, his condition progressively deteriorated and he was retired on a Bi-State pension because of his injuries.

The commission determined that plaintiff's daily wage was $7.68 and therefore determined that his annual earnings were $1,536.00 under Section 287.250(5) RSMo 1969, V.A.M.S. This resulted in a weekly wage of $29.50 and a weekly compensation rate of $19.69. For permanent total disability, at the rate of $19.69 per week for 300 weeks, he was awarded $5,907.00. For a life pension he was awarded $18.00 per week for life beginning 300 weeks after June 3, 1969.

■ From this award, an appeal was taken to the circuit court and from the judgment of the circuit court affirming the award of the commission, plaintiff now appeals to us contending that the method of computation used by the commission was erroneous. His first thesis is that where a person is employed in two related employments by different employers, the combined income from both employments should be used to determine the average wage upon which compensation is to be based. Secondly, if this court does not adopt such a theory, then he seeks to have us adopt one whereby we would consider the income for a full time school bus driver for the Hazelwood District as the base upon which to compute his award of compensation. If we were at liberty to adopt a basis for the calculation of benefits, we would be inclined to consider seriously the concurrent employment wage experience of the employee

since one of the principal objectives of the method prescribed in the Workmen's Compensation Law is to arrive at as fair an estimate as possible of the claimant's future earning capacity. Larsen, Law of Workmen's Compensation, Section 60.31. Thus an employee who holds two concurrent jobs, and is injured while engaged in one of them, would have his wage base computed on his earnings received from both jobs. As to the employee, this would provide a fair estimate of future earning capacity in that it would be based upon his previous earning capacity and would more truly represent his economic loss than if based upon one of his two employment experiences. As to an employer-insurer who might have to bear the expense of the larger award in the event of injury to a part time worker, a justification for the higher award can be found in the fact that an employee working on a limited time basis would not be subject to exposure to injury as one who would be working full time yet still engaged in the same type of employment. Some states have passed laws providing for accumulation of earnings from two concurrent jobs when they are in a similar line of work (e. g. 64 McKinney's Consolidated Laws of New York, c. 67, Workmen's Compensation Law, Section 14, p. 462). But we in this state are required to look to Section 287.250, largely unchanged since 1926, for our method of computation. The pertinent paragraphs of this section are:

"The basis for computing the compensation provided for in this chapter shall be as follows:

"(1) The compensation shall be computed on the basis of the annual earnings which the injured person received as salary, wages, or earnings if in the employment of the same employer continuously during the year next preceding the injury;

"(2) Employment by the same employer shall be taken to mean employment by the same employer in the grade in which the employee was employed at the time of the

accident uninterrupted by absence from work due to illness or any other unavoidable cause;

"(3) If the injured person has not been engaged in the employment of the same employer for the full year immediately preceding the accident, the compensation shall be computed according to the annual earnings which persons of the same class in the same employment and same location (or if that be impracticable, of neighboring employments of the same kind) have earned during such period;

"(4) As to employees in employments in which it is the custom to operate throughout the working days of the year, the annual earnings, if not otherwise determinable, shall be regarded as three hundred times the average daily earnings in such computation;

"(5) As to employees in employments in which it is the custom to operate for a part of the whole number of working days in each year, such number, if the annual earnings are not otherwise determinable, shall be used instead of three hundred as a basis for computing the annual earnings; provided, the minimum number of days which shall be so used for the basis of the year's work shall be not less than two hundred; * * *."

■ In employing the proper method of determining a person's wage base and compensation rate under this section, it is necessary to commence with the first subsection and then to descend in numerical order under the other subsections until the wage rate provision is found that applies to the particular facts of the case. Bietsch v. Midwest Piping & Supply Co., 86 S.W.2d 187, 189 [1] (Mo.App.1935); Cross v. Crabtree, 364 S.W.2d 61, 67 [9] (Mo.App. 1962). In the interpretation of the provisions of the Workmen's Compensation Law, we are admonished to construe them liberally with a view to the public welfare. All doubts should be resolved in favor of the employee and this rule is applicable to the question of the amount of compensation

to be awarded and in the computation of the wage base. Section 287.800, RSMo 1969, V.A.M.S.; Dixon v. Postlewait Glass Co., 241 Mo.App. 174, 238 S.W.2d 93, 95 [2, 3] (1951); Baer v. City of Brookfield, 366 S.W.2d 469, 471 [6, 7] (Mo.App.1963). On the other hand, the rule of liberal construction does not authorize the allowance of a claim which lacks some of the essential elements required by the act. Mershon v. Missouri Public Service Corp., 359 Mo. 257, 221 S.W.2d 165, 167 [1] (1949).

■ Considering subsection (1) we note that the first part reads: "The compensation shall be computed on a basis of the annual earnings which the injured person received as salary, wages, or earnings * * *." If this portion stood alone, it could be liberally construed to include "salary, wages, or earnings" from all employment in which the employee is engaged during the year before the injury. However, it restricts the earnings to those "in the employment of the same employer". There is here no reference to any base of concurrent employment. But rather, it is a reference to a single employer. The entire act itself concerns itself with the liability of an employer to furnish compensation for personal injury or death of the employee by accident arising out of and in the course of his employment with the employer in whose service the employee was injured (e. g., Section 287.120, RSMo 1969, V.A.M.S.). In construing the application of the act, we have stated: "A court has no power to add to or take from the plain words of an unambiguous statute but must apply the law as it is written by the General Assembly." Zasslow v. Service Blue Print Company, 288 S.W.2d 377, 380 [3] (Mo.App.1956). There, in considering the question as to who should bear the expense of attorney's fees in a subrogation matter, we stated (p. 382): "A reading of the Workmen's Compensation Act as a whole, with particular consideration of §§ 287.250 and 287.270, supra, makes it plain that the General Assembly intended compensation to be computed upon the

basis of the salary, wages or earnings received by the employee while engaged in the performance of the duties of and in the usual course of the *employer's* business, and that any sums received by an employee on account of a previous employment by another and different employer are not to be included in the computation." From a reading of the section and the references just quoted, we cannot read into subsection (1) a meaning that it refers to earnings from concurrent multiple employers unless they be joint employers (Section 287.130). Subsection (1) refers only to the earnings received from the employer in whose service the employee is injured. Since plaintiff here was not employed "continuously" by the school district during the year preceding the injury as required by subsection (1), the method set forth therein is not applicable.

■ Since subsection (2) is confined to definition, we pass to subsection (3). This subsection has been construed to apply to employees who accept employment which normally requires services for a full year and are then injured prior to the expiration of one year after they were employed. The compensation is based upon annual earnings just as in the case of subsection (1) but the experience of one year in the employment of the same employer is lacking. In this case, it directs the computation of earnings to be based upon those wages earned by persons of the same class in the same employment in the same location, or, if that be impractical, then of neighboring employments of the same kind, for the annual period preceding the injury. Casebolt v. International Life Ins. Co., 42 S.W.2d 939, 940 [2] (Mo.App. 1931); Lamkins v. Copper-Clad Malleable Range Corp., 42 S.W.2d 941, 944 [8] (Mo. App.1931); Edwards v. Ethyl Gasoline Corp., 342 Mo. 98, 112 S.W.2d 555, 561 [7] (1937); Cross v. Crabtree, *supra*, 364 S.W. 2d 61, 67 [9, 10] (Mo.App.1962). Mr. Glazebrook was here employed only on a 180 days basis, and since his expectations with regard to employment did not extend through the year so far as his work as a bus driver for the school district was concerned, he could not be classified under this subsection.

■ We now consider the provisions of subsection (4). In Biswell v. St. Louis-San Francisco Ry. Co., 49 S.W.2d 203, 204 (Mo.App.1932), we stated: "Considering all of these sections together, the conclusion seems to be inevitable that, if the employee was employed in a grade which was operated by his employer continuously throughout the working days of the year, then the computation to be made would have to be based upon the provisions of section 3320(d) [now Section 287.250(4)], but since, under the provisions of subdivision (b) [now subdivision (2)], the employment shall be taken to mean in the grade in which the employee was employed, the calculation likewise must be based upon the operation in the grade in which such employee is employed. If the railway company, because of its operation of the railway every day in the year, is to be held to operate each one of its departments for the entire year, many of the seasonal occupations connected with their operation would lead to the necessity of applying subdivision (d) [now subdivision (4)] to every accident that might occur in any branch of its departments, irrespective of the occasional operation of such departments only. We are unable to concur in such construction. If that construction was adopted, it would mean that every concern, although operating its general business during the whole year, would be subject to the provisions of subdivision (d), although it might be engaged for short periods in some specific enterprise which is an incident only of its general business." This interpretation was followed and the paragraph above set forth was quoted with approval in Jackson v. Curtiss-Wright Airplane Co., 334 Mo. 805, 68 S.W.2d 715, 719 (1933). Here, Mr. Glazebrook was employed as a bus driver in a grade of employment which by reason of its very nature, that is the busing of school children to and from school, last-

ed only 180 days during the regular school term. Even though the school district itself may have operated certain phases of its system throughout the year, the employment of a school bus driver in which Mr. Glazebrook was engaged was limited to a part of the year. Subsection (4) explicitly applies to "employments in which it is the custom to operate throughout the working days of the year." Mr. Glazebrook's employment is obviously outside the provisions of this subsection. Hartman v. Union Electric Light & Power Co., 331 Mo. 230, 53 S.W.2d 241, 244 [3] (1932).

■ As found by the Industrial Commission and affirmed by the circuit court, subsection (5) contained all of the factual elements which apply to the employment of Mr. Glazebrook as a school bus driver. His was an employment in which it was the "custom to operate for a part of the whole number of working days in each year". Since the number of working days were less than 200, 200 days must be used as the basis of the year's work. Burgstrand v. Crowe Coal Co., 333 Mo. 43, 62 S.W.2d 406, 407 [4] (1933); Baer v. City of Brookfield, *supra*, 366 S.W.2d 469, 474 [10] (Mo.App.1963).

Plaintiff has sought to persuade this court to follow the ruling of the Illinois Supreme Court in Vaught v. Industrial Commission, 52 Ill.2d 158, 287 N.E.2d 701 (1972). There the Illinois court had before it the interpretation of a section of their statutes identical in the main part to our Section 287.250. The facts, however, were different. There a cab driver who was regularly employed in another industry worked the year around on a part time basis with the cab company on days that did not require his attention to his regular employment. The court stated (p. 705): "After carefully reading the entire section, we conclude that the legislature failed to expressly provide a basis for computing the annual earnings of an employee who works regularly, but only on a part-time basis." The use of the full time wages of a cab driver was approved by the court as a basis

for determining compensation for any injury occasioned in driving the cab. This, of course, is a case outside of our jurisdiction and could only be persuasive. Further, the facts are substantially different in that the cab driver there worked regularly throughout the year but only on a part time basis. Here, Mr. Glazebrook worked only part time from September to May each year.

The employer School District has also appealed in this case contending that the Industrial Commission failed to properly compute the wage base for the allowance of compensation. The Commission determined that the plaintiff's daily wage was $7.68. His annual earnings, based upon the statutory minimum of 200 days, were $1,536.00, resulting in a weekly wage of $29.54. The employer contends that the daily wage by which plaintiff was paid for the school year 1968–1969 up until he last worked for the school district in the fall of 1968 amounted to $4.80 per day. This daily rate multiplied by the minimum number of 200 days would amount to $960.00, and then divided by 52 weeks would amount to a weekly wage of $18.65.

■ The difference in wages came about because of a change that plaintiff had made in his work schedule beginning with the school year in September of 1968. Previous to this time, he had been employed by the school district in the morning when he worked approximately 3¼ hours, and would then work for Bi-State in the evenings on a straight run. After acquiring seniority with Bi-State, he was able to change his employment with that company from evenings to mornings, and then started to work on a two hour bus run in the afternoon with the school district. He remained a school bus driver but because he started the afternoon runs instead of morning runs, he was not able to obtain as many hours as he would have liked. Being limited for the time to two hours, his pay, at least from September 5, 1968, until he was injured on September 23, 1968, was $4.80 per day. As he explained it, when-

ever possible the school district let seniority prevail on the choice of hours with priority given to full time drivers. He wanted to work as long a run as he could get in the afternoon so long as it didn't conflict with his work in the first part of the day with Bi-State. This is somewhat the reverse of the situation in Richardson v. Consolidated Products Co., 237 Mo.App. 1119, 183 S.W. 2d 393 (1944), where plaintiff had worked continuously throughout the year preceding his injuries but was not a regular full time employee. He would fire a boiler and do other utilty work about the employer's premises. During the week prior to his injury, he had taken over increased duties and worked some 65½ hours because of the absence of the man who regularly attended the boiler. The Commission used his increased pay during the week prior to his injury because they considered that his grade of employment had changed. The court reversed the award and remanded the cause to the .Commission. Although the facts are not the same, we believe that the statement of the court with respect to the law is also applicable in the case before us. The court determined that the plaintiff Richardson had not been placed in a hgher or lower grade of employment, nor was his grade raised to that of the employee regularly firing the boiler. In a case such as that, the computation should not be based upon the particular work the employee was engaged in at the time of the injuries but rather is based upon the work he was engaged in most of the time or the work that he was principally or chiefly engaged in. See also Ropp v. Moon Bros. Mfg. Co., 226 Mo.App. 845, 44 S.W.2d 888, 890 [4] (1932). Here Mr. Glazebrook did not move to a different job or different employment. He was still a part time bus driver. It is true that his work time had been temporarily curtailed over what it had been during the previous school term because of changing his hours from morning to afternoon, but he still expected to obtain a larger number of hours after he obtained additional seniority and he was allowed to take another run similar to the number of hours that he had worked in the morning. It is the purpose of the Workmen's Compensation Law to compensate to the extent that the law provides for the loss of earning power of the workman in the future occasioned by his injuries. The law very wisely provides a rule for ascertaining the extent of future loss to the workman by basing his future capacity upon the record that the workman himself has established before experiencing his injury. We believe that the award of the Commission is consistent with the law and affirm the judgment of the trial court.

CLEMENS and McMILLIAN, JJ., concur.