**Joseph E. SEIFERD, Appellant/Claimant,**

**v.**

**DISTINCTIVE SERVICE AND SIGN ERECTION, INC., Respondent/Employer, and the Treasurer of the State of Missouri as Custodian of the Second Injury Fund, Respondent.**

No. 21799.

Missouri Court of Appeals,
Southern District,
Division Two.

March 19, 1998.

Motion for Rehearing or Transfer
Denied April 10, 1998.

Application for Transfer Denied
May 26, 1998.

Patrick J. Platter, Daniel, Clampett, Powell & Cunningham, L.L.C., Springfield, for Appellant/Claimant.

Robin L. Bullock, Newberry, Haden, Cowherd, Bullock & Keck, L.L.C., Springfield, for Respondent/Employer.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Cara Lee Harris, Asst. Atty. Gen., Springfield, for Respondent.

MONTGOMERY, Chief Judge.

In this workers' compensation case, Joseph E. Seiferd (Claimant) appeals from the decision of the Labor and Industrial Relations Commission which affirmed the award and decision of the administrative law judge (ALJ). The principal issue on appeal is whether the Commission properly applied § 287.250.1(2) instead of § 287.250.3 or, in the alternative, § 287.250.1(5) in determining the appropriate rate of compensation.[1] Claimant also contends the "multiple employment" provision of § 287.220.9 applies to him and that this statute retroactively applies to his injury on April 12, 1993.

The Commission adopted the following facts as found by the ALJ:

On March 17, 1993, the claimant and his wife purchased the business of Distinctive Service & Sign Erection, Inc. This purchase was made from the claimant's father-in-law. The claimant had worked for his father-in-law prior to buying the business. The claimant had started out just accompanying and helping his father-in-law on trips to erect and service signs. He eventually started being paid an hourly wage of $6.00 as a helper.

When the claimant purchased the business he organized it as a Subchapter S corporation. Claimant was an officer and shareholder. When organizing this corporation the claimant set his salary at $1,000 per month. He used the $1,000 figure because this was the least he could draw and keep the Subchapter S status. He had paid himself $500 total prior to the date of the accident. The claimant as the owner was responsible for all aspects of his business. He bid jobs, obtained applicable licenses, bought equipment, repaired equipment, maintained inventory, scheduled jobs, scheduled employees, and supervised his crew. He had two nonunion employees at the time of the accident.

Claimant was injured on April 12, 1993, less than a month after purchasing this business. This accident has left him a quadriplegic.

Claimant was also employed at Burlington Northern. He was laid off at the time of the accident. He was eligible to be called back when needed and testified that

---

1. Statutory references are to RSMo 1994 unless otherwise indicated.

he intended to go back to work at Burlington Northern whenever he would be called back. Claimant was paid 75% of his daily average by Burlington Northern while on reserve status.

He testified that he would have hired a foreman for the sign company if he went back to work at Burlington Northern. He did not know how much he would have paid a foreman.

The claimant presented the testimony of what other sign companies paid their employees. Tom Barker, the manager of Payne Signs, testified. Some of their employees are union and some are nonunion. He testified that in 1993 they paid shop foremen $13.50 per hour irregardless of union status, journeymen were paid $11.18 per hour, and helpers were paid $6.80. Gary Hawkins, an accountant at Missouri Neon, testified. He testified that in 1993 his company paid a field supervisor $16.11 per hour, a journeyman $11.18 per hour, an estimator $12.92 per hour, a shop foreman $17.82 per hour, and a helper $6.80 per hour. Missouri Neon had 40 employees at this time.

■ Our review of this case only involves questions of law under § 287.495.1. As to questions of law, our review of the Commission's decision is *de novo*. *Davis v. Research Medical Center*, 903 S.W.2d 557, 560 (Mo. App.1995).

■ The first disputed issue, the appropriate rate of compensation, is to be determined on the basis of the applicable subsection of § 287.250, which prescribes how compensation is to be computed. The legislature revised § 287.250 in 1992 and 1993. Prior to 1992 this statute had ten subsections. The cases relating to the earlier version of § 287.250 set forth the proper method of determining the applicable wage rate as follows:

> "[I]t is necessary to commence with the first subsection and then to descend in numerical order under the other subsections until the wage rate provision is found that applies to the particular facts of the case."

*Stegeman v. St. Francis Xavier Parish*, 611 S.W.2d 204, 210 (Mo. banc 1981) (*quoting Glazebrook v. Hazelwood School Dist.*, 498 S.W.2d 823, 826 (Mo.App.1973)). While no cases have interpreted the current version of § 287.250 on this issue, we find it only logical that the previous method used to determine the proper wage rate should continue to be followed. Claimant does not suggest that following *Stegeman* is now improper. He simply believes that § 287.250.1(2) does not apply to him.

The Commission issued a final award which calculated Claimant's average weekly wage based on his designated monthly salary of $1,000. The Commission applied § 287.250.1(2) which reads:

> Except as otherwise provided for in this chapter, the method of computing an injured employee's average weekly earnings which will serve as the basis for compensation provided for in this chapter shall be as follows:
>
> . . . .
>
> (2) If the wages are fixed by the month, the average weekly wage shall be the monthly wage so fixed multiplied by twelve and divided by fifty-two[.]

Claimant argues that the Commission should have based its calculation on § 287.250.3 or, alternatively, on § 287.250.1(5). These subsections provide:

> (5) If the employee has been employed less than two calendar weeks immediately preceding the injury, the employee's weekly wage shall be considered to be equivalent to the average weekly wage prevailing in the same or similar employment at the time of the injury, except if the employer has agreed to a certain hourly wage, then the hourly wage agreed upon multiplied by the number of weekly hours scheduled shall be the employee's average weekly wage[.]
>
> . . . .
>
> 3. If an employee is hired by the employer for less than the number of hours per week needed to be classified as a full-time or regular employee, benefits computed for purposes of this chapter for permanent partial disability, permanent total disability and death benefits shall be based

upon the average weekly wage of a full-time or regular employee engaged by the employer to perform work of the same or similar nature and at the number of hours per week required by the employer to classify the employee as a full-time or regular employee, but such computation shall not be based on less than thirty hours per week.

According to *Stegeman*, these three subsections are to be applied in descending order until the appropriate wage rate provision is found which applies to the facts of this case. Under this approach, the Commission properly applied § 287.250.1(2). The facts plainly demonstrate that Claimant's wages were fixed by the month. Claimant's own testimony established this fact. We are not persuaded by Claimant's argument that we should look behind Claimant's reasons for establishing his monthly wage. Whatever his reasons, the fact remains that Claimant caused his Subchapter S corporate employer to fix his salary at $1,000 monthly. Although this Court is required to liberally construe chapter 287 with a view toward the public welfare, we also remain aware of our lack of authority to add to or take from "the plain words of an unambiguous statute." *Glazebrook*, 498 S.W.2d at 826. Clearly, we must apply the law as written. *Id.*

We do not ignore Claimant's arguments that he was a part-time employee under § 287.250.3 or, alternatively, that he was employed less than two weeks before his injury which could place him within the provisions of § 287.250.1(5). Although we sympathize with Claimant, we cannot bend the law to accommodate him. We must reach our decision based on the facts presented.

First, Claimant was not a part-time employee. By his own testimony, he began working exclusively for his sign company on March 18, 1993, and continued such employment until his injury on April 12, 1993. Claimant admitted he had not worked for Burlington Northern since January or February and as of April 12, 1993, the railroad had not called him back to work. Furthermore, Claimant carefully described the work he performed for his sign company prior to April 12, 1993. He described a full-time job.

Next, Claimant's employment circumstances do not fall within § 287.250.1(5). As noted, Claimant had worked full time for his sign company over three weeks before his accident, but Claimant argues that he had received no wages for this time period. If he is correct, § 287.250.1(7) comes into play. Paraphrased, this section provides that an employee is considered employed only for those weeks in which the employee performs labor and receives wages for such labor from the employer. However, Claimant's argument that the $500 payment he received was a dividend instead of a wage is not supported by the record. When asked if he paid himself a dividend, Claimant responded by saying that he "drew out $500." It was within the Commission's discretion to give credit to this testimony. *Bewig v. Schnucks Markets*, 809 S.W.2d 461, 463 (Mo.App.1991). The Commission did not find Claimant's employer paid him a dividend. Points I and II are denied.

■ Claimant's last point contends the Commission erred in failing to award him benefits from the Second Injury Fund or Employer based on the "multiple employment" provisions of § 287.220.9. Claimant argues this provision is remedial in nature and therefore should have retroactive application.

The legislature enacted § 287.220.9 in 1993. It became effective on August 28, 1993. Claimant's injury occurred on April 12, 1993.

A contention similar to Claimant's was recently made and rejected in *Stark v. Missouri State Treasurer*, 954 S.W.2d 645 (Mo. App.1997). There, the claimant sought wage loss benefits against the Second Injury Fund under § 287.229.9.[2] Her injury occurred prior to the effective date of this subsection. Claimant argued the 1993 amendment was procedural in nature rather than substantive and should have retroactive application. The Western District of this Court disagreed. After citing the general rule that statutes are not applied retroactively, the Court said that "prior to this amendment, an injured person

---

2. *Stark* quotes this subsection in its entirety. We do not repeat it here.

had no claim against the Fund for second job wage loss benefits. The amendment did not fine tune an existing right—it created a new cause of action." *Id.* at 647. We agree with *Stark* and deny Claimant's Point III.

The award is affirmed.

SHRUM and BARNEY, JJ., concur.