**L. T. NOLAND, Respondent,**

v.

**GEORGE TATUM MERCANTILE COM-
PANY, Employer, and Hardware Mutual
Casualty Company, Insurer, Appellants.**

No. 46314.

Supreme Court of Missouri,

Division No. 1.

May 12, 1958.

Rehearing Denied June 9, 1958.

Herbert Van Fleet, Joplin (Seiler, Blanchard & Van Fleet, Joplin, of counsel), for appellants.

Rex Titus, Joplin (Richart & Titus, Joplin, of counsel), for respondent.

COIL, Commissioner.

In this workmen's compensation case, employer and insurer have appealed from a judgment affirming the order of the industrial commission awarding claimant compensation for permanent total disability and other benefits. We have jurisdiction because the record affirmatively shows that the amount in dispute, exclusive of costs and irrespective of all contingencies, exceeds $7,500. Article 5, Section 3, Constitution of Missouri, 1945, V.A.M.S.

There are two questions: whether the work respondent was doing when injured was *casual employment* within the meaning of the Workmen's Compensation Law and, if not, whether the correct formula was applied to determine the amount of compensation payable.

There is little, if any, dispute as to the essential facts and, taking the view of the evidence most favorable to the conclusion of the commission, this statement is justified. Employer, George Tatum Mercantile Company, was a corporation engaged in the general merchandise business at Anderson, Missouri, selling groceries, dry goods, lumber, hardware, furniture, and appliances. Victor Tatum was general manager and vice-president. Robert Mitchell managed the hardware and furniture department which sold, among other things, television sets and antennas. Rufus England bought a television for a price which included installation of the set and the antenna. It was the practice and custom for Mr. Mitchell, with the help of Carl Gorlinsky and sometimes of Mr. Drake (both Tatum employees), to install the sets, including the antennas. Usually the antenna mast could be so placed on the roof of a building as to avoid overhanging limbs of adjacent trees. Survey and experimentation at the England home, however, demonstrated that tree limbs so covered the area above the roof that without removing at least one limb and trimming others it would be impossible to extend the mast higher than thirty-five feet above the roof which did not produce a satisfactory picture. So, to accomplish employer's business, viz., to satisfactorily install the antenna by extending the mast to a height of fifty feet, it was determined after a conference between Mitchell and Victor Tatum that tree trimming was essential and it was also agreed that someone should be employed to do that job.

Mr. Tatum suggested plaintiff because he theretofore had done some tree trimming for the Tatums. Mitchell went to Noland's home on January 1, 1955, and there employed him to do the necessary tree trimming on the England installation job at $1.50 per hour. Noland immediately followed Mitchell to the England home, taking with him a small, narrow-blade saw. There present, with the company service truck, were corporation employees Mitchell and Gorlinsky. With the use of a rope and ladder from the service truck and under the detailed directions of Mitchell, Noland began the removal of a tree limb and, in the process, fell thirty or forty feet to the ground, resulting in his permanent and total disability.

By the accident date employer had installed about eighty television antennas and the England installation was the first where

a situation like instant one had been encountered; that is to say, where overhanging branches so covered a roof as to make it impossible to avoid those branches by locating the antenna mast in a particular place.

For the twenty-five years preceding the accident, Noland had been engaged in farm work, driving a truck, and in caring for yards, and, at the time of his employment by the Tatum Company, was working three days a week at a stave mill where he earned 85¢ per hour. He had never before been employed by the Tatum Company as distinguished from the Tatums as individuals.

Mr. Tatum testified that an extra employee always was hired on the basis of an 8-hour day if, as we understand his testimony, the job for which he was hired was to last for a day or more. No one knew how long it would have taken Noland to have completed the tree-trimming job, but there was testimony estimating that time as two hours. On January 5, 1955, a ticket was posted to a salary account in Noland's name on the general ledger of employer corporation, disclosing that $6 had been paid to Noland for four hours' work at the rate of $1.50 an hour. A treasury department form W–2, showing that 12¢ had been deducted as social security tax, was thereafter furnished to Noland. Employer was open for business every day of the year except Sundays and national holidays. It was agreed that there was no other person working for employer in the same class of employment or who had been employed under the same circumstances as Noland, and it was also agreed that there was no other person in the locality of the casualty in a similar class of employment.

Section 287.090, RSMo 1949, V.A.M.S., provides in part that certain provisions of the Workmen's Compensation Law shall not apply to "Employments which are but casual or not incidental to the operation of the usual business of the employer." In-stant employer and insurer do not contend that Noland was not an employee, or that he did not suffer an accident arising out of and in the course of his employment, or that his employment was not incidental to the operation of the usual business of George Tatum Mercantile Company. Their sole contention on this aspect of the case is that the employment in which Noland was engaged at the time he was injured was "casual employment" within the meaning of the portion of the statute above quoted.

The compensation act does not define "casual employment" but the court attempted a definition in Sonnenberg v. Berg's Market, 227 Mo.App. 391, 55 S.W.2d 494, which was approved in Tokash v. General Baking Co., 349 Mo. 767, 163 S.W.2d 554. The definition there set forth was the dictionary meaning of the word "casual" and, as might be expected where much of a total definition as spelled out in the dictionary is applied to a word as that word is used in a specific manner to describe a particular legal concept, it has been difficult, as disclosed by the cases, to satisfactorily apply all the facets of that definition to each subsequent factual situation.

In any event, and sufficient for present purposes, we reiterate that which the cases have heretofore held, viz., that the question is not whether a particular *employee* is a *casual employee*. On the contrary, the statute makes it clear that it is the *employment* which must have been casual in order for the benefits of the Workmen's Compensation Law to be withheld from an injured employee. Sonnenberg v. Berg's Market, supra. And thus, neither the length of the employment nor the nature of the employment contract is controlling in determining whether the employment as such was or was not casual. Norris v. Koenig, Mo.App., 183 S.W.2d 160. While some of the cases seem to indicate that one of the tests to be applied in determining whether certain employment was casual is whether there was regularity

in the times for performance of the employment or whether there was an expectation that the employment would be continuous or regularly recurring, nevertheless, the most reasonable view seems to us to be that the irregularity of the times at which particular employment might arise and the unforeseeability of when and how often such employment might exist are relatively unimportant considerations *if the employment, however short in duration and however temporary, and however irregular, is usual and necessary to the proper conduct of the employer's business.*

■ Thus, and at the risk of oversimplifying a close question, it seems to us that whether the instant employment was *casual employment* within the meaning of the Workmen's Compensation Law depends upon whether Noland's (employee's) work, trimming the tree, was a usual and necessary part of employer's normal business, viz., to satisfactorily install television sets including the antennas. We think that the *employment* which Noland was performing at the time of his injury was usual and necessary to the proper conduct of employer's business and, therefore, that the industrial commission's conclusion that Noland's employment was not casual was authorized by law. Section 536.140, RSMo 1949, V.A.M.S.

It is true, as employer and insurer contend, that theretofore Tatum's employees had invariably been able to avoid overhanging branches and limbs by the placement of antenna masts in certain positions, and thus this was the only instance in which it had become necessary to remove a limb in order to obtain the desired height for the television mast. And the necessity for tree trimming may have been unforeseen and unexpected in the sense that the department manager did not realize until he arrived at the job that tree limbs occupied the entire area above the England roof and that some would have to be removed. But the necessity for removing or overcoming the effect of obstacles inter-

fering with the installation of television antennas must have been reasonably foreseeable and certainly should have been anticipated as being a usual and necessary part of employer's business. Employer knew or should have known that wherever an obstacle interfered with the erection of an antenna mast to a height which would permit the satisfactory installation of a television set, a usual and essential part of his business was to remove or overcome that obstacle, and the *employment* to accomplish that result was, therefore, usual and essential to the proper conduct of employer's business.

The parties rely on the same cases. We have heretofore mentioned the Sonnenberg and Norris cases, supra. Others cited are McFall v. Barton-Mansfield Co., 333 Mo. 110, 61 S.W.2d 911; Kennedy v. J. D. Carson Co., Mo.App., 149 S.W.2d 424, and Nabors v. United Realty Co., Mo. App., 298 S.W.2d 474, 478. The only one of those which holds the employment casual is the Nabors case, supra. That case is clearly distinguishable from and is wholly unlike instant case on its facts. There, a realty company hired one who became its employee to remove two disconnected hot-water tanks from the basement of one of the company properties to a storeroom in another location. Employee was injured in attempting to accomplish the assigned task. The court held the employment was casual, mainly, as we read the opinion, for the reasons that the employment was essentially for the transportation of specific articles and not in any sense for the maintenance or repair of the property; that, thus, such a transportation job was "not [the] usual concomitant of" employer's business; and that the removal and transporting of the tanks were not necessary to the operation of employer's business.

Under the facts of the instant case, we have no doubt that the proper installation of the television antenna mast, and thus the removal of an obstacle essentially

prerequisite to such proper installation, was usual and necessary to the successful operation of employer's business, and that, therefore, the employment which Noland was performing was not casual within the meaning of the Workmen's Compensation Law.

The other question is the amount of the award in so far as concerns the weekly payment for three hundred weeks and thereafter. There is no dispute that the accident totally and permanently disabled Noland and there is no dispute about the amounts allowed for past and future nursing and medical services. The sole question on this aspect of the case is whether the industrial commission properly used paragraph (4), Section 287.250, RSMo 1949, as a basis for computing the compensation due Noland, and whether, in connection therewith, it used the correct daily wage, or whether, as contended by employer and insurer, the commission should have used paragraph (5) of Section 287.250 as the basis and should have used a different daily wage.

The commission found that Noland had been employed at $1.50 per hour for an 8-hour day and that his daily wage was therefore $12.00. It also found that, inasmuch as Noland's annual earnings were not otherwise determinable and because employer operated throughout the year, paragraph (4) of Section 287.250, supra, furnished the proper basis for computing compensation. Paragraph (4) provides: "As to employees in employments in which it is the custom to operate throughout the working days of the year, the annual earnings, if not otherwise determinable, shall be regarded as three hundred times the average daily earnings in such computation." Consequently the commission multiplied the daily wage of $12.00 by three hundred and divided by fifty-two to determine employee's average weekly wage.

Employer contends that the evidence does not support the commission's conclusion but, on the contrary, was such as to make paragraph (5), Section 287.250, applicable and that an average daily wage not to exceed $6.00 per day should have been used. Paragraph (5) of Section 287.250 provides: "As to employees in employments in which it is the custom to operate for a part of the whole number of working days in each year, such number, if the annual earnings are not otherwise determinable, shall be used instead of three hundred as a basis for computing the annual earnings; provided, the minimum number of days which shall be so used for the basis of the year's work shall be not less than two hundred." Employer would multiply a daily wage of $6.00 by two hundred and divide by fifty-two to establish employee's average weekly wage.

■ We are of the opinion that employer and insurer are correct in their contention that there was no evidence from which the commission reasonably could have found that the annual earnings should be regarded as three hundred multiplied by the average daily earnings. On the contrary, the evidence was such that it supported as the only reasonable finding that annual earnings should be regarded as two hundred times the average daily earnings. We are of the further opinion, however, that there was evidence from which the commission reasonably could have found, as it did find, that the average daily wage to be used was $12 rather than $6 as contended by employer.

The reasons for both the foregoing conclusions are these. Mr. Tatum, the vice-president and general manager of employer, as heretofore noted, testified that when "extra help" was employed it was on the basis of an 8-hour day, and it is conceded that Noland's rate of pay was $1.50 per hour. Now, as also heretofore noted, it was estimated that Noland's job would last two hours and employer actually paid Noland the sum of $6 (the amount due for four hours' work) even though Noland was injured very shortly after beginning work. We do not understand, however,

that the use of the $12 figure necessarily depends upon the belief that, or makes it necessary to speculate that, Noland would have worked a full day or even as much as the four hours for which he was paid, had he completed the job for which he was hired. In our view, the significance of the usual-8-hour-day-for-extra-help testimony was that it showed that the kind of employment in which Noland was engaged contemplated, wherever there was a day's work or more than a day's work, an 8-hour day at $1.50 per hour, or a $12 daily wage. Consequently, we are of the opinion that the commission was justified in finding that a $12-daily-wage figure was a reasonable one to use in fixing Noland's compensation benefits.

The fact, however, that employer operated its business throughout the working days of the year did not, standing alone, justify the commission in regarding the annual earnings as three hundred times the average daily earnings as provided in paragraph (4) of Section 287.250. That is because the particular *employment* in which Noland was engaged obviously was to operate for only a small part of the whole number of working days in each year. Biswell v. St. Louis-San Francisco R. Co., Mo.App., 49 S.W.2d 203 [4], 204. There was no evidence supporting any other finding. And, as the exact number of those working days was not otherwise determinable and as there was no evidence from which Noland's annual earnings could be otherwise estimated or determined, paragraph (5) of Section 287.250, supra, was applicable. It follows, therefore, that plaintiff's compensation for permanent total disability should be computed by applying the two hundred days' provision of paragraph (5) of Section 287.250, supra, to a daily wage of $12.00.

The judgment of the circuit court should be modified by changing the amount of the award in accordance with this opinion, and, as so modified, the judgment is affirmed. It is ordered, therefore, that this case be remanded to the circuit court with directions to remand to the industrial commission for the purpose of modifying the amount of the award in accordance with the views herein expressed. Paragraph 5, Section 536.140, supra.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.