PHYLLIS L. CARDIFF, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Prestige Metal Products, Inc., Appellee).

Second District   No. 2—84—0119 WC

Opinion filed September 24, 1984.

BARRY, J., dissenting.

Richard J. Smith, of Sullivan, Smith, Hauser & Noonan, Ltd., of Waukegan, for appellant.

Ian M. Sherman, of Rooks, Pitts, Fullagar & Poust, of Chicago, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

Petitioner, Phyllis Cardiff, sought workers' compensation for an injury she sustained while in the employ of respondent, Prestige Metal Products, Inc. An arbitrator awarded her compensation for 17⁴/₇ weeks of temporary total disability and for 28½ weeks of permanent partial disability. The arbitrator awarded Cardiff weekly payments of $20.68, computed pursuant to section 10(a) of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1979, ch. 48, par. 138.10(a)). The Industrial Commission upheld the decision of the arbitrator, and

the circuit court of Lake County confirmed the decision of the Commission. Cardiff appeals from the portion of the arbitrator's decision which determined her weekly compensation payments to be $20.68. We affirm.

The sole issue for review is whether petitioner's compensation was correctly computed in accordance with section 10(a) of the Act.

On March 16, 1978, Cardiff was hired by Prestige Metal Products, Inc. (Prestige), for part-time employment on an "on-call" basis. Prestige had two distinct grades of employees. Full-time employees worked at least 40 hours per week and were paid wages ranging from $4 to $11 per hour. Part-time employees were hired with the understanding that they would have no guaranteed working hours. Rather, they would be called to work when and if work became available. There could be lengthy periods of time during which these employees would not work at all. The employees in this grade would not know from week to week whether or when they would actually be called to work. Part-time employees all received wages of $3 per hour. Cardiff worked solely as such a part-time employee.

On March 21, 1979, Cardiff was injured while working at Prestige when two of her fingers were crushed in a machine. In determining her compensation award, the arbitrator relied on sections 10(a) and 10(b) of the Act, which provide:

> "(a) The compensation shall be computed on the basis of the annual earnings which the injured person received as salary, wages or earnings if in the employment of the same employer continuously during the year next preceding the injury.
>
> (b) Employment by the same employer shall be taken to mean employment by the same employer in the grade in which the employee was employed at the time of the accident, uninterrupted by absence from work due to illness or any other unavoidable cause." (Ill. Rev. Stat. 1979, ch. 48, pars. 138.10(a), (b).)

The arbitrator determined Cardiff's earnings during the year next preceding her injury to be $1,075.20 and that her average weekly wage was $20.68.

■ Cardiff contends that section 10(a) should not be applied in her case because she did not work for Prestige for a full year preceding her injury on March 21, 1979. She claims that even though she was hired on March 16, 1978, she was not called to work until April 24, 1978. On this basis she argues that she was not employed by Prestige until April 24, 1978, less than a year before her injury. However, this argument ignores the fact that Cardiff was hired as an "on-call"

employee. She was eligible to be called to work from the moment she was hired. The fact that she was not called immediately did not diminish her "on-call" employee status as of March 16, 1978. It is clear, then, that Cardiff was employed by Prestige for the year preceding her injury.

■ Cardiff next contends that even if she had worked for the full year preceding her injury, section 10(a) is still inapplicable because she was a part-time employee. She relies on *Vaught v. Industrial Com.* (1972), 52 Ill. 2d 158, 287 N.E.2d 701, for the proposition that, as a part-time employee, she was not "continuously" employed during the year preceding her injury as required under section 10(a).

In *Vaught*, the court dealt with a petitioner who had been employed as a weekend taxi driver for many years and who had other, unrelated full-time employment during the week. He was injured while working as a taxi driver. The court felt that section 10(a) was inapplicable to this situation because the petitioner was not "continuously" employed for the full year preceding his accident. Under such circumstances the court concluded that "the legislature failed to expressly provide a basis for computing the annual earnings of an employee who works regularly, but only on a part-time basis." The court went on to compute the petitioner's annual earnings by basing them upon what a full-time taxi driver's wages would be.

The petitioner here, Cardiff, argues that her wages too must be based on the wages of the full-time Prestige employees. However, this argument ignores the recent decision of our supreme court in *Hasler v. Industrial Com.* (1983), 97 Ill. 2d 46, 454 N.E.2d 307. There the court computed a part-time employee's compensation on the basis of section 10(a). In *Hasler*, as here, the court dealt with an employee who worked different hours, days, and weeks during the year, depending upon the availability of work. She did not work every week of the year, and she worked in this capacity for a single employer in the year preceding her accident. Based upon these facts, the court found that she was "continuously" employed and that section 10(a) was applicable in determining her compensation.

We believe the supreme court's holding in *Hasler* is controlling here. The facts involved in the present case are virtually indistinguishable from those in *Hasler*. Also, the court in *Hasler* distinguished *Vaught* and other cases relied on by petitioner here. Those cases dealt with claimants who had two employers in the year preceding their injury. Further, here, as in *Hasler*, the annual wages of the claimant were determinable and were actually determined by employer records.

More importantly, the application of the *Vaught* holding to the present case would create an anomalous result. The arbitrator found that Cardiff earned approximately $1,075 during the year preceding her injury, and under section 10(a) she would be compensated on this basis at $20.68 per week (her average weekly salary for the previous year). Under the computation method that Cardiff contends is applicable, she would receive $200 per week or nearly 10 times her average weekly wage. As the supreme court stated in *Hasler*,

> "We believe that the purpose of the Act is to compensate, or "make whole," an injured employee, not to provide a windfall. To hold otherwise would create a situation in which it is more advantageous, financially, to be injured than to be employed." 97 Ill. 2d 46, 52, 454 N.E.2d 307, 310.

We are aware of our opinion in *Yellow Freight Systems v. Industrial Com.* (1984) 128 Ill. App. 3d 47, but we are of the opinion that it is not in conflict with our holding in the instant case.

Our case here and *Yellow Freight Systems* demonstrate once again the difference between cases falling under the rule of *Hasler* and those under the rule of *Vaught*. In *Hasler* the supreme court held specifically that the claimant was not an intermittent employee.

> "In the instant case, claimant was not engaged in two occupations; she worked for the *same* employer for five years preceding the injury. Her annual wages were clearly determined. Further, we agree with the Commission that the record does not indicate claimant's employment was temporary or seasonal. She performed both interior and exterior work on buildings, and was employed certain months during all seasons. Claimant was therefore 'continuously' employed only by respondent, and the fact that she did not work for him every day does not render that employment intermittent." (*Hasler v. Industrial Com.* (1983), 97 Ill. 2d 46, 50, 454 N.E.2d 307, 309.)

The court then applied section 10(a) of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.10(a)) in calculating benefits.

In *Vaught*, the supreme court pointed out that the claimant was moonlighting, *i.e.*, working two jobs, and therefore apparently was not expressly covered by the Act. The court was compelled to fashion a remedy.

In our case the claimant was working for a single employer, as in *Hasler*, and was therefore working continuously under section 10(a) even though she did not work every day. *Yellow Freight Systems*, like *Vaught*, represents the moonlighting situation.

We reiterate that we believe this case is controlled by *Hasler* and

that *Yellow Freight Systems* is controlled by *Vaught* and all are reconcilable on that basis.

We note in passing that with the 1980 amendments to section 10 of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.10) cases such as this one and *Yellow Freight Systems* are unlikely to recur.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

SEIDENFELD, P.J., McNAMARA and KASSERMAN, JJ., concur.

JUSTICE BARRY, dissenting:

I agree with my colleagues that Cardiff was employed by Prestige Metal Products, Inc. (Prestige), for more than a year preceding her injury, and that she was hired and worked as a part-time worker on an "on call" basis. However I disagree with the conclusion that for the purpose of rate computation the subsection to be applied is what was then subsection (a) of section 10 of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.10(a)) (the Act).

Cardiff was injured more than a year after being hired and was engaged to fill in at $3 per hour for any grade of Prestige employees in job grades that ranged from $4 an hour to $11 an hour. It is unquestioned that she was not engaged or classed as a full-time employee. The evidence of the crushing by a machine of two of her fingers caused the arbitrator to award her 60% loss of use of the left middle finger and 30% loss of use of the ring finger, amounting to some $589, as well as some temporary total compensation, based upon actual earnings for the year prior, applying section 10(a) of the Act. The arbitrator's decision was affirmed by the Commission "based on the election of the plaintiff not to file [a] summary setting forth any claim of error in the arbitrator's decision." The Commission additionally awarded accrued interest to the petitioner as provided in section 19(n) of the Act (Ill. Rev. Stat. (1979), ch. 48, par. 138.19(n)).

As I view the Act and the precedents of our supreme court, the *Vaught* decision is controlling. The court said in *Vaught* that "the legislature failed to expressly provide a basis for computing the annual earnings of an employee who works regularly, but only on a part-time basis," and found that Vaught was not continuously employed, found section 10(a) did not therefore apply, and computed Vaught's rate accordingly. (*Vaught v. Industrial Com.* (1972), 52 Ill. 2d 158, 166, 287

N.E.2d 701, 705.) Cardiff also was hired as and worked as a regular part-time-class employee, and her rate should be calculated in the same manner. Moonlighting or the fact that an injured person had one or several employers was not controlling.

I disagree with the majority that *Hasler* is controlling. The overriding distinction is that Hasler was a full-time-class employee. She worked for the same employer for five years. She worked as an inside/outside painter/decorator, much like the typical construction employee, when work was available, that is, wherein it is the custom to operate for part of the whole number of working days in each year. I believe the supreme court determined that Hasler was a full-time-class employee and chose to find that Hasler was therefore "continuously" employed and so indicated, applying subsection (a) of section 10. The supreme court's precedent in *K. & R. Delivery, Inc. v. Industrial Com.* (1957), 11 Ill. 2d 441, 143 N.E.2d 56, is inapposite. In *K. & R.* the part-time delivery helper was not considered "continuously" employed. He was one of several such helpers, some of whom had other work, and some not. The rationale of *K. & R.* would seem to apply to employee Cardiff. And, under the precedents, to try to define "continuous" in terms of the number of employers does not give any clear meaning to the word.

It is obvious that the specific and lone legislative purpose of including "continuous" in subsection 10(a) was to identify, define and limit, initially, the annual wage of the usual employee who works full-time for more than a year next preceding the injury. The remaining subsections of section 10 attempted to be applicable to the unusual employment situations. The legislative purpose is reflected thereby to compensate the industrially injured in a limited, generally exclusive fashion, so as to not be a burden upon society. It was well defined in *Shell Oil Co. v. Industrial Com.* (1954), 2 Ill. 2d 590, 119 N.E.2d 224, where the court declared:

> "The Workmen's Compensation Act is a humane law of remedial nature, and wherever construction is permissible its language is to be liberally construed to effect the purpose of the act. [Citations.] The purpose of the act is that the burdens of caring for the casualties of industry should be borne by industry and not by the individuals whose misfortunes arise out of the industry, not by the public. Every injury sustained in the course of the employee's employment, which causes a loss to an employee, should be compensable. [Citations.] (2 Ill. 2d 590, 596, 119 N.E.2d 224, 228.)

In fulfilling that purpose, and while amending the Workers' Compen-

sation Act in at least every biannual session in modern times, the legislature has considered that the compensation rate should not exceed the employee's average weekly wage (*e.g.,* section 8 (b)(1)), but did not choose to provide for a different scale of rates for moonlighters, nor for moonlighters that have more than two jobs. Nor did the legislature guide us in determining how to categorize the various employments a person might have, that is, which of several part-time jobs might be considered the primary job. And, I believe it can be said with some certainty that worker's compensation insurance company underwriters will not recommend premium reductions based upon the number of moonlighters or part-time employees hired. More likely premium increases per hour of work might be expected because part-time employees are less experienced.

Simply put, the Act did not provide differently for moonlighters. All employees similarly situated are the subjects of the same risks. When one is injured and temporarily out of the employment market, that person is not available to work, to earn dollars, nor is he/she available to seek other employment, whether or not a moonlighter. When one suffers some permanent injury, that person has less to offer any employer in the future.

In the instant case the arbitrator determined that Cardiff was temporarily unavailable for work for $17^4/_7$ weeks, and that she should be compensated for the permanent loss of use of two fingers to the extent of $28^1/_2$ weeks at the rate of $20.68 per week. I would find that because Cardiff contracted to work for $3 per hour she should be limited by that agreement; that her award should be computed pursuant to section 10(e), but limited as aforesaid; that the circuit court should be reversed and the Commission's decision set aside except for that part of the Commission's awarding interest due under section 19(n) of the Act; and I would remand for a new decision as directed hereby. To rule that the compensation for the substantial loss of use of two fingers is satisfied by an award of $589 is not fulfilling the purpose of the Act. *Shell Oil Co. v. Industrial Com.* (1954), 2 Ill. 2d 590, 119 N.E.2d 224.