D. Charlene MARTIN,
Claimant–Respondent,
Cross–Appellant,

v.

MID–AMERICA FARM LINES, INC.,
Appellant–Employer,

and

Dennis Chappell, d/b/a Chappell
Trucking, Respondent–Employer.

No. 70857.

Supreme Court of Missouri,
En Banc.

April 18, 1989.

Robert W. Hill, William E. Stoner, Springfield, for D. Charlene Martin.

John G. Newberry, Springfield, for Mid–America Farm Lines, Inc.

John Price, Raymond E. Whiteaker, Springfield, for Dennis Chappell.

BLACKMAR, Justice.

Here we consider the method of computation for computing workers' compensation benefits owing to an employee who worked part time and intermittently. Most of the numerous cases which have dealt with the question of compensation benefits for part time employees are court of appeals decisions. We essentially confirm the uniform course of prior holdings going back for more than fifty years.

The claimant, D. Charlene Martin, worked as the "second seat driver" of an over-the-road semitrailer rig, owned by Respondent Dennis Chappell and leased by him to appellant-respondent Mid–America Farm Lines, Inc. Her husband was the "first seat driver." She did not accompany him on all of his trips but rather worked when she chose to work, especially on longer trips. Her employment began in April of 1984 and continued until she was injured in September of that year. During that time she worked 18 days and received total compensation of $1,032.52, as shown in a W–2 form issued to her by Chappell. She was paid seven cents per mile traversed.

She sustained injuries in a fall from the cab of the tractor on September 13, 1984. The Labor and Industrial Relations Commission, disagreeing with the administrative law judge, concluded that she had sustained an accident arising out of and in the course of her employment so as to be entitled to workers' compensation under § 287.120, RSMo 1986. It determined that Mid–America was the "employer" responsible for paying compensation benefits, and awarded benefits computed pursuant to the 200–day rule of subdivision (5) of § 287.250. It denied the claim for medical and hospital expenses which had been billed but not paid, on the ground that the claimant had failed to establish that the charges were reasonable. Both the claimant and Mid–America appealed.

The Missouri Court of Appeals, Southern District, affirmed except as to the amount of compensation. It concluded that compensation should be computed pursuant to subdivision 3 of § 287.250, and that there was a failure of proof as to the requirements of this subdivision because the claimant had not introduced evidence of the compensation received by employees in the same employment in the same or similar locations. In so doing, the opinion suggested that our courts had applied an erroneous definition of the word "continuously" as used in subdivision (1), and that an employee who worked all hours tendered him or her by the employer should be held to have worked continuously. The court of appeals recognized that its holding was in conflict with *May v. U.B.C. Marketing*, 719 S.W.2d 43 (Mo.App.1986), and so transferred the case to this Court because of the conflict and because of the general interest and importance of the questions presented. We now take the case as on initial appeal

and resolve all issues presented. Additional facts pertinent to the multiple issues will be discussed in the body of the opinion.

### I.  *The Finding of Accident*

■ Mid–America argues that the commission's finding of accident is not supported by the evidence. We defer to the fact findings of the commission when supported by substantial evidence on the record as a whole.[1]

The claimant testified as follows:

Q  Did anything unusual occur while cleaning that truck on September 13, 1984?

A  I fell out of the truck.

Q  Could you describe how your fall out of the truck occurred?

A  I was standing in the door on the passenger side, inside the cab, getting ready to step out. I remember starting to put my right foot down onto the step, but to the best of my knowledge my foot never touched that step; and I just fell out.

This testimony is sufficient to support the finding of accident. *See Kloppenburg v. Queen Size Shoes, Inc.*, 704 S.W.2d 234, (Mo. banc 1986), casting substantial doubt on the concept of "idiopathic fall," as discussed in *Matthews v. Roadway Express, Inc.*, 660 S.W.2d 768 (Mo.App.1983), when an employee falls and sustains injury while working. *See also, Wolfgeher v. Wagner Cartage Service, Inc.*, 646 S.W.2d 781 (Mo. banc 1983). The possibility of a non-accidental fall is for the commission to weigh. Likewise the circumstance that the employee may have given a less complete version of the incident when questioned by an investigator is for the commission to weigh.

Because the claimant's own testimony supports the commission's finding of accident, we need not consider the admissibility of her description of the incident to her physician as set out in a medical report received in evidence.

### II.  *Who is the Employer?*[2]

■ In Mid–America's next point it suggests that the commission erred because there was not sufficient competent evidence to establish that it was liable as the employer. It argues that the employee contacted Chappell, was paid by Chappell, and was reimbursed by Chappell for expenses relating to the maintenance of the truck. Therefore, it concludes, the employee was the employee of Chappell, or at least the joint employee of Chappell and Mid–America.

The lease from Chappell to Mid–America contained the following clause:

LESSOR'S drivers, *under LESSEE'S control and direction*, shall operate said equipment during the term hereof; and LESSOR is responsible for the payment of all tolls, ferries, loading and unloading of the vehicle if applicable, drivers wage or salaries, all payroll deductions, including unemployment compensation, social security and withholding taxes due to reason of wage or earning of drivers; and *LESSEE* assumes Workers' Compensation Liability on drivers operating the lease equipment. (Emphasis added).

Cleaning the cab relates to the operation of the equipment within the control of Mid–America, not to maintenance for which Chappell was responsible. Section 287.130, RSMo 1986, moreover, recognizes the right of joint employers to provide for a distribution of their proportionate contributions under the Workers' Compensation Law. If claimant were determined to be a joint employee, Mid–America would not be relieved of any part of its burden. Mid–America was properly determined to be the responsible employer under the Workers' Compensation Law. *Bradshaw v. Richardson Trucks, Inc.*, 467 S.W.2d 945 (Mo. banc 1971); *Dickhaut v. Bilyeu Refrigerated Transport Corporation*, 441 S.W.2d 54 (Mo.1969).

---

1.  Section 287.495, RSMo 1986; *Johnson v. City of Duenweg*, 735 S.W.2d 364, 366 (Mo. banc 1987); *Barnes v. Ford Motor Co.*, 708 S.W.2d 198, 199 (Mo.App.1986).

2.  In Parts II and IV the opinion makes use of prior draft opinions circulated in the case by Judges Robertson and Maus without use of quotation marks.

### III. *The Rate of Compensation*

### (a) The "basis for computing the compensation" (§ 287.250)

The commission found that the claimant's compensation was properly determined pursuant to subdivision (5) of § 287.250. It computed her "average daily earnings" at $57.36, based on 18 days of employment for total compensation of $1,032.52, yielding annualized earnings of $11,472 under the 200–day rule and an "average weekly wage" of $220.62.

The first six subdivisions of § 287.250 read as follows:

(1) The compensation shall be computed on the basis of the annual earnings which the injured person received as salary, wages, or earnings if in the employment of the same employer continuously during the year next preceding the injury;

(2) Employment by the same employer shall be taken to mean employment by the same employer in the grade in which the employee was employed at the time of the accident uninterrupted by absence from work due to illness or any other unavoidable cause;

(3) If the injured person has not been engaged in the employment of the same employer for the full year immediately preceding the accident, the compensation shall be computed according to the annual earnings which persons of the same class in the same employment and same location (or if that be impracticable, of neighboring employments of the same kind) have earned during the period;

(4) As to employees in employments in which it is the custom to operate throughout the working days of the year, the annual earnings, if not otherwise determinable, shall be regarded as three hundred times the average daily earnings in the computation;

(5) As to employees in employments in which it is the custom to operate for a part of the whole number of working days in each year, that number, if the annual earnings are not otherwise determinable, shall be used instead of three hundred as a basis for computing the annual earnings; provided, the minimum number of days which shall be so used for the basis of the year's work shall be not less than two hundred;

(6) In the case of injured employees who earn either no wage or less than the earnings of adult day laborers in the line of employment in that locality, the yearly wage shall be reckoned according to the average annual earnings of adults of the same class in the same (or if that is impracticable then of neighboring) employments;

\* \* \* \* \* \*

■ The first five of these subdivisions are concerned with compensated employees. Our cases, consistently over the years, have held that subdivisions (1), (3), (4) and (5) are to be applied in descending order, and that these subdivisions collectively are designed to provide a basis for computation of the compensation for every employee who works for wages or salary.[3] (Subdivision (2) is definitional, and subdivision (6) has to do with uncompensated or minimally compensated employees.)

Subdivision (1) applies to employees with one year of full time service to the present employer. It was early held in *Coble v. Scullin Steel Co.,* 54 S.W.2d 777 (Mo.App. 1932), that this subdivision applied only to full time employees, and that employees who worked regularly but only part time did not work "continuously" within the compass of subdivision (1). Subdivision (3) applies also to full time employees with less than a year of service to the present employer and makes use of the earnings of full time employees in comparable employment. Inasmuch as the claimant was not a full time employee, neither (1) nor (3) applies to her case.

■ The statute then commands us to have recourse to either (4) or (5). These subdivisions make use of the claimant's

**3.** *Hartman v. Union Electric Light & Power Co.,* 53 S.W.2d 241, 244 (Mo.1932); *Stegeman v. St. Francis Xavier Parish,* 611 S.W.2d 204, 210 (Mo. banc 1981); *Eagle v. City of St. James,* 669 S.W.2d 36, 40 (Mo.App.1984).

actual average daily earnings in the service of the present employer in order to compute an annualized wage, either of 300 days under subdivision (4) or a minimum of 200 days under subdivision (5). We postpone discussion of the distinction between the two subdivisions for the moment so as to better analyze the cases and provide guidance about a distinction which has proved troubling in the past. The point, for the present, is that one of the two must be used if the employee has not worked for the employer full time for a year and the annual earnings of a comparable full-time employee are not available. The employee is not relegated to the minimum compensation of $40 per week simply because proof under (1) and (3) is not available.[4]

█ A court of appeals opinion ordinarily passes into limbo with the transfer of the case to this Court, but, because of the radical change in the law that court proposed, and similar expression in other authorities, we believe that discussion of the basic issues would be helpful. The court of appeals held that the claimant's compensation should be computed on a reduced basis because she was a part-time employee. Our cases consistently hold that there is no distinction between full-time and part-time employees and that all injured employees are to be compensated on the basis of annualized earnings, in accordance with one of the subdivisions of § 287.250.

The court of appeals observed that, under the commission's award, this claimant stands to receive substantially more in compensation than she would have received in earnings had she not been injured. It points to a similar expression of concern in *May v. U.B.C. Marketing, supra.* The concern is misplaced. The workers' compensation laws provide a substitute for the common law action which an employee might otherwise maintain against an employer.[5] The act benefits both employers and employees. The employee is allowed sure compensation for injury arising out of and in the course of employment, free from the burden of establishing the employer's negligence and from the common law defenses of contributory negligence,[6] assumption of risk,[7] and the fellow servant doctrine.[8] The employer is relieved of the threat of open-ended awards for intangible damages. Workers' compensation is designed to provide compensation for loss of earning capacity, which is a proper element of common law damages[9] and is allowable without regard to the time worked in the past, prospects for future employment, or plans for working in the future. If part time employees were relegated to reduced compensation they would not be made whole for their loss.

The court of appeals made substantial use of the treatise by Professor Arthur Larson on Workmen's Compensation. Larson suggests that some part time employees, especially those who limit their hours voluntarily, should be compensated at a lower rate than full time employees. He cites cases from many jurisdictions but, for some reason, discusses very few Missouri authorities even though we have substan-

---

4. In *Johnson v. City of Duenweg,* 735 S.W.2d 364 (Mo. banc 1987), the employee's widow was relegated to the minimum because she could not establish a comparable rate under subdivision (3). Subdivisions (4) and (5) were not available to her because the employee was a volunteer fireman receiving only minimal remuneration. The writer filed a dissent. In *Wotlinski v. LaFlam Bindery,* 716 S.W.2d 22, 25 (Mo.App.1986), the court held that compensation was properly computed on the basis of the employee's actual earnings under subdivision (5), when neither the employer nor the employee introduced evidence which would support compensation under subdivision (3).

5. *See, e.g., Dixon v. Frazier–Davis Const. Co.,* 298 S.W. 827 (Mo.1927) (Employee sued employer for failure to provide a safe place to work).

6. *See, e.g., Van Bibber v. Swift & Co.,* 286 Mo. 317, 228 S.W. 69 (1921).

7. *See, e.g., Morris v. Pryor,* 272 Mo. 350, 198 S.W. 817 (1917).

8. *See, e.g., Graczak v. City of St. Louis,* 202 S.W.2d 775 (Mo.1947).

9. *See, Bone v. General Motors Corp.,* 322 S.W.2d 916 (Mo.1959); *Baker v. Norris,* 248 S.W.2d 870 (Mo.App.1952).

tial case law on the subject.[10] His discussion does not include analysis in depth of the varying statutory provisions of the several states, which may explain differences in result. It is clear that his suggestions are at variance with the uniform course of our decisions over a period of more than fifty years. Larson also cites cases from other jurisdictions which are consistent with our holdings and inconsistent with the views he advances.[11] His position certainly is not universally acclaimed.

In *Cross v. Crabtree,* 364 S.W.2d 61, 67 (Mo.App.1962), the court held that compensation for death of an employee who limited his hours because he was drawing social security should be computed pursuant to subdivision (3), because the annual earnings of a comparable employee in similar employment were available. Judge Hunter gave a clear explanation of the basis for his holding as follows:

> In view of the provisions of subsection 3 of Section 287.250 which apply to the facts before us it is immaterial that the deceased was drawing social security or may have actually earned no more than $1,200 in the year next preceding his injury and death. This subsection establishes a comparative method of computation rather than one based on actual earnings....

This case is sharply criticized by Larson. His criticism indicates no reason for rejecting the holding, but simply demonstrates the sharp divergence between his views and those consistently expressed in our cases.

We see no reason to depart from the uniform course of our decisions, which we believe to be correct in their application of the underlying statutory policy. Section 287.250 and its predecessors have remained substantially unchanged since 1925 even though there have been numerous amendments to other sections of the workers' compensation statutes.[12] Those who believe that the benefits available to part time employees should be substantially reduced should make their case before the general assembly, which has shown apparent satisfaction with the courts' construction of § 287.250. *Person v. Scullin Steel Co.,* 523 S.W.2d 801, 803 (Mo. banc 1975); *Messick v. Grainger,* 205 S.W.2d 739, 741–42 (Mo.1947).

### b. 200–day Rule or 300–day Rule?

■ The claimant's appeal asserts that the commission erred in applying the 200–day rule of subdivision (5) rather than the 300–day rule of subdivision (4). She argues that the "employment" customarily operated the year around. We agree in the context of this case.

As our prior analysis demonstrates, subdivision (4) must be applied, if applicable in accordance with its terms, before subdivision (5) is considered. The controlling cir-

**10.** *See, e.g., Noland v. George Tatum Mercantile Co.,* 313 S.W.2d 633 (Mo.1958) (employee worked only an hour or two trimming a tree in preparation for installation of a television antenna before being injured, and was awarded compensation pursuant to the 200–day rule of subdivision (5)); *Glazebrook v. Hazelwood School District,* 498 S.W.2d 823 (Mo.App.1973) (employee was injured while "moonlighting" as a bus driver for the school district and received compensation based on 200 days even though the school bus operated only 180 days); *Baer v. City of Brookfield,* 366 S.W.2d 469 (Mo.App. 1963) (volunteer fireman who worked whenever he was called received compensation pursuant to the 200–day rule); *Bicanic v. Kroger Grocery and Baking Company,* 117 S.W.2d 650 (Mo.App. 1938) (grocery employee working on a "stagger system" because of the Depression was awarded compensation pursuant to the 300–day rule of subdivision (4)); *Coble v. Scullin Steel Co.,* 54 S.W.2d 777 (Mo.App.1932), leading case on the point, (employee worked only 105 days during the preceding year and was awarded compensation pursuant to the 300–day rule).

**11.** *See,* 2 Larson, The Law of Workmen's Compensation, § 60.21(c) (1987) at 10–661 to 10–667 citing cases from New Jersey, Maine, Pennsylvania, Rhode Island, Louisiana, and Colorado.

**12.** *E.g.,* Occupational diseases (§§ 287.063 and 287.067) first became compensable in 1931 and subsequent amendments in 1959, 1983, and 1987 have broadened the scope of compensable diseases so that now employees may recover for loss of hearing, carcinoma, and contagious diseases contracted in the course of employment. Also, the Second Injury Fund (§ 287.220) received major changes in 1939, 1943, 1953, 1955, and 1980. *See,* Historical Note to § 287.220, V.A.M.S. 1965.

cumstance is whether there is an "employment" which customarily operates throughout the year. If there is such employment, the 300-day rule applies even though the employee is on a limited schedule. *Cope v. House of Maret*, 729 S.W.2d 641 (Mo.App. 1987). There an employee was hired to do a painting job at a restaurant and also was instructed to perform certain maintenance and laboring tasks. He worked limited hours and his employment was scheduled to come to an end when the painting was completed. The court held, nevertheless, that the 300-day rule applied because his work was not confined to painting and the restaurant was in operation the year around.

Similar considerations apply here. The claimant worked as "second seat driver." Her duties consisted of relief driving, keeping the cab clean, and doing paperwork. Mid-America was an over-the-road carrier operating throughout the working days of the year. The duties performed by the claimant would be performed by some employee of Mid-America whenever its trucks operated.

There are cases suggesting that the 200-day rule applies when an employee voluntarily limits his or her hours, but no square adjudication on the issue. *May v. U.B.C. Marketing*, 719 S.W.2d 43 (Mo.App.1986), applied the 200-day rule, but the employee would have received the maximum compensation under either rule. In *Vaseleou v. St. Louis Realty and Securities Co.*, 130 S.W.2d 538 (Mo.1939), the commission applied the 200-day rule to an employee who worked as a maintenance man two or three days a week at his election, but the employee did not appeal. In *Noland v. George Tatum Mercantile Co.*, 313 S.W.2d 633 (Mo.1958), the claimant was hired to trim trees on a single occasion, with no indication that the employer would ever have occasion to perform this task again. The court concluded that, even though the employer operated during all regular working days throughout the year, the claimant failed to establish that the employment so operated. We believe that *Cope* is closer to the case at hand, and provides authoritative guidance.

The 200-day rule exists to protect the exposure of seasonal or intermittent employers. It does not exist to limit the compensation paid to part-time employees, unless their employment comes within its terms.

### IV. *Medical Bills*

■ Martin appeals the decision of the commission disallowing her hospital and doctor bills totaling $4,223.61. At the hearing before the administrative law judge Martin presented these medically-related bills and testified that her visits to the doctor and various hospitals were the result of injuries received in her fall. With the exception of charges for prescription medication, Martin had not paid the bills. Mid-America objected to each of the bills on the ground that there was no evidence that the charges were fair and reasonable.

Under these circumstances, the commission sanctions an anomalous result: The medications prescribed by the physician are fair and reasonable; the bill of the physician prescribing the medication is not, absent independent proof. The distinction rests, as the commission said in its decision, "on the facts that the drugs were prescribed by the treating physician and the [prescription] bills were paid by the claimant."

We have long adhered to the broad construction of the Act mandated by § 287.800, RSMo 1986, to achieve its salutary purposes. Section 287.140.3, RSMo 1986, requires a showing that compensable medical charges be "fair and reasonable for similar treatment of other similarly injured persons...."

In this case, Martin testified that her visits to the hospital and various doctors were the product of her fall. She further stated that the bills she received were the result of those visits. We believe that when such testimony accompanies the bills, which the employee identifies as being related to and the product of her injury, and when the bills relate to the professional services rendered as shown by the medical records in evidence, a sufficient factual ba-

sis exists for the commission to award compensation. The employer, of course, may challenge the reasonableness or fairness of these bills, or may show that the medical expenses incurred were not related to the injury in question. In this age of soaring medical costs it no longer serves the purposes of the Act to assume that medical bills paid by an injured worker are presumed reasonable (because they were paid), while those which remain unpaid, very probably because of lack of means, must be proved reasonable and fair.

We do not believe that it is necessary to remand the case to the commission for additional findings as to the medical bills. The appellant-employer makes no showing that the bills are not reasonable. Thus the commission's order is not supported by substantial evidence on the record as a whole, and we may direct it to enter the order it should have entered. *Johnson v. City of Duenweg Fire Dept.*, 735 S.W.2d 364 (Mo. banc 1987).

### V. *Interest*

■ The parties by joint motion ask us to determine the method of computation of interest on the compensation benefits found to be due to the claimant. Section 287.160.2 reads in pertinent part as follows:

2. Compensation shall be payable as the wages were paid prior to the injury, but in any event at least once every two weeks. Each installment shall bear interest at the rate of eight percent per annum from the date when due until paid....

We believe that the answer to the question tendered is made clear by the statute. If an installment of compensation is due, and is not paid, it bears interest at the statutory rate from the time when it should have been paid. Otherwise the employee is not made whole. It makes no difference that the amount of compensation may be in dispute. If the carrier, or self-insured employer, has the use of money which was properly payable to the claimant it is properly chargeable for the value of that use. Means are available for those in possession of large sums of money to obtain daily and substantial returns on their holdings. *See Massman Construction Co. v. Director of Revenue*, 765 S.W.2d 592 (Mo. banc 1989). They should account to those to whom the money should have been paid.

Because of the explicit statutory provision, authorities about payment of interest on civil judgments are not necessarily applicable.[13] The statute overrides the general principle that a judgment debtor is not liable for interest when the debtor does not know the amount due and therefore is not in a position to make payment. *See Fohn v. Title Insurance Corporation of Saint Louis*, 529 S.W.2d 1, 5 (Mo. banc 1975).

Section 287.160.2 does not apply to the award of medical expenses which have not been paid by the claimant. The claimant has not shown that the providers are demanding interest of her, or that she has lost anything by the delay in payment. The record shows no basis for awarding interest on the medical expenses.

### *Conclusion*

The award of the commission is affirmed as to the findings of accident and disability and the determination that appellant Mid–America is the responsible employer. The balance of the award is reversed and the case is remanded to the commission with directions to recompute the compensation in accordance with the 300–day rule of § 287.250(4) and to allow medical bills in the amount of $4,223.61. Costs are assessed against Mid–America.

**13.** *Komosa v. Monsanto Chemical Company*, 317 S.W.2d 396 (Mo. banc 1958), may be read as holding that there is no essential distinction between § 287.190.2 and the general interest statute, § 408.020, RSMo 1986. That case is clearly distinguishable from this one in that there, the employer was ready and willing to pay an award while the claimant appealed, seeking a higher award. Here both employers consistently took the position that the claimant was entitled to no compensation whatsoever. To the extent that *Komosa* is inconsistent with this holding, it should no longer be followed. It seems that an employer should be able to make effective tender of amounts conceded to be due, so as to stop the running of interest, and that the claimant should be able to accept this tender without prejudicing any right of appeal.

BILLINGS, C.J., and RENDLEN, HIGGINS and COVINGTON, JJ., concur.

ROBERTSON, J., concurs in part and dissents in part in separate opinion filed.

WELLIVER, J., concurs in part and dissents in part and concurs in separate concurring in part and dissenting in part opinion of ROBERTSON, J.

ROBERTSON, Justice concurring in part and dissenting in part.

Raising the shield of *stare decisis*, the majority today turns from the uncertainty and confusion appellate courts have brought to the interpretation of Section 287.250, RSMo 1986, and declares itself willing to perpetuate both in the name of "the uniform course of prior holdings going back for more than fifty years" (At 106). Further, the majority creates a rebuttable presumption that all medical bills submitted by a claimant which she testifies are related to her injury are fair and reasonable. While I do not disagree with the majority's approach, until today, the law in Missouri was that paid bills were presumed reasonable and unpaid bills bore no such presumption. On this legal tenet, both the Commission and the employer relied at the hearing. The majority acknowledges as much. To change the rules without allowing the employer an opportunity to rebut the newly-imposed presumption seems manifestly unfair to me.

I concur in that portion of the opinion which finds Martin's injury compensable, that Mid–America Farm Lines, Inc. is the employer and that interest accrues at the statutory rate. However, I respectfully dissent from those portions of the opinion which establish the rate of compensation and approve the medical bills without further hearing.

In this case, the Court of Appeals, Southern District, held that Mrs. Martin failed to establish a compensation rate and was thus entitled only to the statutory minimum of $40.00 per week. Recognizing that its analysis of the appropriate compensation rate was contrary to *May v. U.B.C. Marketing*, 719 S.W.2d 43 (Mo.App.1986), that court transferred the case to this Court. While reaching a result consistent with precedent, the Court of Appeals, Eastern District, in *May*, apparently took no comfort in its decision.

> The statute is ambiguous and very confusing to employers and employees, to lawyers, and to judges. It seems to have been adopted for employment practices as they existed in a previous day. The term "continuous" employment as used in section 287.250(1) should be better defined. Subsections 4 and 5 of that statute refer to "custom to operate" which would seem by the plain language to apply to the employer's business rather than to the days worked by the employee by his choice, although the cases hold otherwise. (Citations omitted.)

*May*, 719 S.W.2d at 45–6. In his opinion for the unanimous Court of Appeals, Southern District, Judge Maus determined to seek an end to the confusion, hoping this Court could achieve that end. Obviously that hope was in vain.

Martin was a part-time employee. She did not go with her husband on every trip; instead, she chose the trips on which she would accompany him. Determination of the appropriate compensation rate has been particularly difficult when part-time employees are involved. No party argues that Section 287.250(1) applies in this case. This is because the word "continuously" has been held by the Court of Appeals to apply only to full-time, as opposed to part-time, working arrangements. *Glazebrook v. Hazelwood School District*, 498 S.W.2d 823 (Mo.App.1973); *Baer v. City of Brookfield*, 366 S.W.2d 469 (Mo.App.1963); *Bicanic v. Kroger Grocery and Baking Company*, 117 S.W.2d 650 (Mo.App.1938); *Bietsch v. Midwest Piping and Supply Company*, 86 S.W.2d 187 (Mo.App.1935); and *Coble v. Scullin Steel Company*, 54 S.W.2d 777 (Mo.App.1932). Martin was thus not employed by Mid–America "continuously during the year next preceding the injury" as that phrase has been interpreted by the courts.

Heretofore, Section 287.250(3) has been interpreted in the same manner as subdivision 1 applying only to full-time employees "who accept employment normally requiring full year services but who are injured prior to the expiration of a year after initial hiring." *Eagle v. City of St. James*, 669 S.W.2d 36, 40 (Mo.App.1984). *See also Glazebrook*, 498 S.W.2d at 827. This Court has followed *Glazebrook*. *Stegeman v. St. Francis Xavier Parish*, 611 S.W.2d 204, 210 (Mo. banc 1981).

Having eliminated the applicability of subdivisions 1 and 3 by construction, our courts have employed subdivisions 4 and 5 to determine the compensation rate for part-time employees, irrespective of the length or nature of their employment relationship with the employer. *Cope v. House of Maret*, 729 S.W.2d 641 (Mo.App.1987); *May*, 719 S.W.2d at 45; *Glazebrook*, 498 S.W.2d at 829. Yet, the language in subdivision 4 describes *"employments* in which it is the custom to operate throughout the working days of the year ..." (emphasis added). Subdivision 5 applies to *"employments* in which it is the custom to operate for a part of the whole number of working days in each year ..." (emphasis added). Nevertheless, this Court has construed that language to mean the number of days worked by the employee, not the number of days which the employer operates. "Subdivision (e) [5], relating to employees in businesses in which it is the custom to operate for only a part of the whole number of working days, of necessity applies to workmen of less than full-year employment." *Hartman v. Union Electric Light & Power Company*, 331 Mo. 230, 53 S.W.2d 241, 245 (1932). The court of appeals has followed *Hartman*. *May*, 719 S.W.2d at 46; *Eagle*, 669 S.W.2d at 41; *Glazebrook*, 498 S.W.2d at 827.

When reviewing the history of our courts' interpretations of Section 287.250, one is left with the distinct impression that the judicial system has exacerbated the problems created by the legislature's imprecise language by adopting cramped, outcome directed, constructions of that language. I find no compelling rationale which requires the word "continuously" as found in subdivision 1 to mean only full-time employees; this, of course, is the key to the majority's conclusion. Yet, it is the length of the employment which provides the distinction drawn in subdivision 1, not whether it is full or part-time. An employee can agree to work one day each week for a full year. In my view, such employment is continuous even though part-time since it is "characterized by uninterrupted extension in time or sequence...." Webster's Third New International Dictionary 494 (1966). I believe that *Coble v. Scullin Steel Co.*, 54 S.W.2d 777 (Mo.App.1932), is simply wrong.

Once one abandons the notion that "continuously" limits subdivision 1 to full-time employees, subdivision 3 can be applied to part-time employment situations for which subdivision 1 would provide the rate but for the occurrence of an injury prior to the expiration of a year's employment. Such a result is not inconsistent with the language of *Glazebrook* limiting subdivision 3 to "employees who accept employment which normally requires services for a full year...." *Glazebrook*, 498 S.W.2d at 827.

Moreover, such a result avoids unrealistic annual wage calculations and advances at least two worthy policy objectives. As to the former, "in New York ... a housewife ... for over two years worked only one day a week as a machine cleaner. Although her regular pay for this had amounted to only $10.03 a week, the Board awarded her temporary total benefits of $25.72 a week, a figure arrived at by applying the portion of the wage-calculation formula that calls for multiplying the daily wage by 200 to arrive at the annual earning capacity." 2 Larson, The Law of Workmen's Compensation, § 60.21(c) (1987) (footnote omitted).[1] In this case, a similar distortion arises under subdivision 5. Martin was employed for fifteen weeks prior to her injury. During those fifteen weeks,

---

1. The majority rejects Larson's views on the basis that his views diverge from those expressed in our cases. One would hope that this Court would be open to changing its views in the face of well-reasoned criticism.

she worked but eighteen days and received $1,032.52 in compensation. Yet, under the majority's holding, she will receive $3,309.23 ($220.61 × 15) for the next fifteen weeks as a result of her injury.

As to policy objectives, the first relates to the desirability that any award accurately reflect the claimant's future earning capacity.

> Since the entire objective is to arrive at as fair an estimate as possible of the claimant's future earning capacity, a claimant who has made only part-time earnings should have his wage basis figured on part-time wages only if the employment itself or his relation to it is inherently a part-time one and likely to remain so; otherwise his earnings should be converted to a full time basis.

2 Larson, The Law of Workmen's Compensation, § 60.00 (1987).

Second, the purpose of the act is to make the employee whole, not provide an opportunity for a windfall as a result of an injury. The use of either subdivision 4, for which Martin argues, or subdivision 5, which the Commission employed, results in a financial windfall to Martin which does not reflect *her chosen* earning capacity under her part-time arrangement. " '[T]he purpose of the Act is to compensate, or 'make whole,' an injured employee, not create a financial windfall. To hold otherwise would create a situation in which it is more advantageous, financially, to be injured than to be employed.' " *Hasler v. Industrial Commission,* 97 Ill.2d 46, 52, 73 Ill. Dec. 447, 450, 454 N.E.2d 307, 310 (1983). *See also Cardiff v. Industrial Commission,* 128 Ill.App.3d 52, 83 Ill.Dec. 671, 470 N.E.2d 1091 (1984), and *Pawhuska Auction Company v. Cochran,* 471 P.2d 451 (Okla.1970).

I would hold that Section 287.250(3) applies in this case. There is no question but that Martin failed to establish "the annual earnings which persons of the same class in the same employment and same location ... have earned during that period...." Section 287.250(3). I do not fault Martin for that omission, however, since under prior interpretations of Section 287.250, she had no reasonable expectation that subdivision 3 would apply in her case. (One wonders what reasonable expectation she could have had given the courts' decisions.) I would remand to the Commission for a hearing at which Martin will be allowed to produce proof in a manner consistent with the requirements of Section 287.250(3).

Finally, on the issue of the medical bills, I would reverse. On remand, the employer should be given an opportunity to show that the bills submitted are unreasonable, unfair, or not related to the injury in light of the rule announced by the majority today.